No. 89-178

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

STATE, ex rel., UNITED STATES FIDELITY
AND GUARANTY COMPANY,

        Relator,

   -vs-

THE MONTANA SECOND JUDICIAL DISTRICT
COURT, SILVER BOW COUNTY; and the
HONORABLE ARNOLD OLSEN, Presiding
Judge,

        Respondent.

---

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

     For Relator:

        Robert J. Emmons argued, Great Falls, Montana

     For Respondent:

        Ross P. Richardson argued, Butte, Montana

     For Amicus Curiae:

        Robert F. James argued; James, Gray & McCafferty,
        (Farmers Union Mutual Ins., Natl. Assoc. of Independent
        Insurers, Natl. Farmers Union Prop. & Cas. Co.),
        Great Falls, Montana
        Randy J. Cox argued; Boone, Karlberg & Haddon,
        (Montana Defense Trial Lawyers), Missoula, Montana
        William Conklin argued & Allen P. Lanning, (State
        Farm Mutual Auto. Ins. Co.), Great Falls, Montana

---

FILED

NOV 15 1989

Ed Smith
LERK OF SUPREME COURT
STATE OF MONTANA

Filed:

        Submitted: September 25, 1989

        Decided: November 15, 1989

_____
             Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This petition for writ of supervisory control arises from an order by the District Court of the Second Judicial District, Silver Bow County, Montana, ordering United States Fidelity and Guaranty Company (USF&G) to produce its entire claims file, including production of letters between USF&G and its attorney. USF&G seeks the writ. We accept jurisdiction, vacate the order of the District Court, and remand for entry of an appropriate protective order.

The issues presented for our review are:

1. Is issuance of a writ of supervisory control appropriate regarding a motion to compel discovery?

2. Is correspondence between USF&G and its attorneys, which occurred after litigation was commenced, privileged from disclosure in a bad faith action filed after resolution of the underlying claim?

The facts giving rise to this case began on June 11, 1986, when a truck owned by Gray Rock Trucking, an insured of USF&G, ran off the road, down an embankment, and collided with the home of John and Sharlene Montoya. This occurred in Butte, Montana.

The house was an older home in which Mrs. Montoya had lived all her life. The Montoyas had done extensive remodeling. As a result of the impact, the house was knocked off its foundation, the foundation was cracked, and support beams were disturbed. The Montoyas had to move out of their house.

A claims adjuster, Mike McNabb, investigated the accident for USF&G. Additionally, USF&G retained the law firm of Gough, Shanahan, Johnson, and Waterman to represent its insured, Gray Rock Trucking, in this matter. In attempting to settle the damage claim there were disputes over inspection and appraisal of the house. The Montoyas hired an

2

attorney, Patrick McGee. Settlement discussions between Mr. McGee and counsel for USF&G began in the fall of 1986 and the Montoyas filed the damage action on March 25, 1987. That claim was settled December 17, 1987.

On April 25, 1988 the Montoyas filed the present action based on the Unfair Trade Practices Act, § 33-18-201(2)(3) and (6), MCA, which states:

> Unfair claim settlement practices prohibited. No person may, with such frequency as to indicate a general business practice, do any of the following:
>
> . . .
>
> (2) fail to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
>
> (3) fail to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
>
> . . .
>
> (6) neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

The complaint alleges that USF&G failed in its statutory duty to "acknowledge and act reasonably promptly" and that it failed to adopt and implement reasonable standards for prompt investigation of claims. It further alleges that USF&G acted fraudulently, oppressively, maliciously and outrageously toward the Montoyas. The damages requested include general, special, and punitive.

On April 25, 1988, the Montoyas requested that USF&G produce its entire claims file, including "all written communications or memoranda of communications between the Defendant and its attorney." Defendants moved for a protective order asserting the attorney-client privilege and work

3

product rule as to five letters. However, two of these letters have been produced by defendant, leaving three letters presently at issue. The three letters at issue are communications from the Gough, Shanahan, Johnson and Waterman firm to USF&G. These letters were written April 12, August 11, and December 10, of 1987, after the damage action was filed. In the motion for a protective order, USF&G offered to produce the documents for in-camera review by the District Court. However, the court did not review the documents. Following oral argument and consideration of briefs, the District Court denied USF&G's motion for a protective order. USF&G petitions this Court for a writ of supervisory control, requesting that these letters be protected.

I

Is issuance of a writ of supervisory control appropriate regarding a motion to compel discovery?

The standard for issuance of a writ has been stated as follows:

> Supervisory control is proper to control the course of litigation when the lower court has made a mistake of law or willfully disregarded the law so that a gross injustice is done and there is no adequate remedy by appeal; also, to prevent extended and needless litigation.

Continental Oil v. Elks Nat. Foundation (Mont. 1989), 767 P.2d 1324, 1326, 46 St.Rep. 121, 123. See also Rule 17(a), M.R.App.P., stating that:

> The supreme court is an appellate court but it is empowered by the constitution of Montana to hear and determine such original and remedial writs as may be necessary or proper to the complete exercise of its jurisdiction. The institution of such original proceedings in the supreme court is sometimes justified by circumstances of an emergency nature, as when a cause of action or a right has

4

arisen under conditions making due consideration in the trial courts and due appeal to this court an inadequate remedy, or when supervision of a trial court other than by appeal is deemed necessary or proper.

Although interlocutory review of discovery orders is not favored, State ex rel. Guar. Ins. v. Dist. Court (Mont. 1981), 634 P.2d 648, 38 St.Rep. 1682, the writ will issue in an appropriate case. See, e.g., State ex rel. Burlington Northern v. Dist. Ct. (Mont. 1989), ___ P.2d ___, 46 St.Rep. 1625 (writ issued because an order placed a party at a significant disadvantage in litigating the merits of a case); Kuiper v. Dist. Court (Mont. 1981), 632 P.2d 694, 38 St.Rep. 1288 (writ issued to determine whether district court properly granted a protective order); Jaap v. Dist. Court of Eighth Judicial Dist. (Mont. 1981), 623 P.2d 1389, 38 St.Rep. 280 (writ issued where district court exceeded its jurisdiction by allowing defendant's attorney to privately interview plaintiff's physicians). A case by case analysis must be employed in determining whether supervisory control should be accepted. State ex rel. Deere and Co. v. Dist. Court (1986), 224 Mont. 384, 730 P.2d 396.

In the present case the District Court has ordered production of communications which clearly implicate the attorney-client privilege. Whether these are discoverable in the context of bad faith insurance litigation is an issue of first impression in Montana. Defendants have exhausted their remedies in District Court. We have examined the three letters and conclude that if USF&G is required to disclose these letters the harm would be irreparable and the remedy of appeal inadequate. We conclude that issuance of the writ is necessary in this case.

5

## II

Is correspondence between USF&G and its attorneys, which occurred after litigation was commenced, privileged from disclosure in a bad faith action filed after resolution of the underlying claim?

The District Court ordered production of letters written by the Gough firm to the insurer, USF&G. We begin by establishing that these communications are within the context of an attorney-client relationship. It is well established that the attorney hired by the insurer to represent its insured, actually is representing both the insurer and the insured. See, e.g., American Mutual Liability Ins. Co. v. Superior Court (1974), 113 Cal.Rptr. 561, 571-72; Rogers v. Robson, Masters, Ryan, Brumund, Etc. (Ill. 1979), 392 N.E.2d 1365, 1370; Longo v. American Policyholders' Ins. Co. (N.J. Super. 1981), 436 A.2d 577, 579. This concept of dual or joint representation has been widely acknowledged, and sanctioned by the courts. In Jessen v. O'Daniel (D.Mont. 1962), 210 F.Supp. 317, Judge Jameson stated:

> Under an insurance contract, however, the insurer initially employs the attorney to represent the interests of both the insured and the insurer. (Emphasis in original).

Jessen, 210 F.Supp. at 331-32.

We approved of this statement by Judge Jameson in Safeco Ins. Co. v. Ellinghouse (1986), 223 Mont. 239, 252-53, 725 P.2d 217, 226, and implicitly acknowledged this commonality of interest. Absent a conflict of interest, the attorney hired by the insurance company to defend its insured, represents both. The letters at issue, therefore, written by the Gough firm to USF&G were attorney-client communications.

Communications between an attorney and the client have traditionally been privileged from disclosure:

6

The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client. As we stated last Term in Trammel v. United States, 445 U.S. 40, 51 (1980): "The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." And in Fisher v. United States, 425 U.S. 391, 403 (1976), we recognized the purpose of the privilege to be "to encourage clients to make full disclosure to their attorneys." This rationale for the privilege has long been recognized by the Court, see Hunt v. Blackburn, 128 U.S. 464, 470 (1888) (privilege "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure").

Upjohn Co. v. United States (1981), 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584, 591.

In Montana this privilege has been codified in § 26-1-803, MCA, which provides:

(1) An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him or his advice given to the client in the course of professional employment.
(2) A client cannot, except voluntarily, be examined as to any communication made by him to his attorney or the advice given to him by his attorney in the course of the attorney's professional employment.

This Court applied this statute to bar production of communications between Goodyear Tire Company and its attorney in Kuiper. In that case we followed the rule that communications to which the attorney-client privilege is applicable are not discoverable. See generally Kuiper, 632 P.2d at 699.

A recent case from the Ninth Circuit, Admiral Ins. v. U.S. Dist. Court for Dist. of Ariz. (9th Cir. 1989), 881 F.2d 1486, discussed at length the discoverability of attorney-client communications. Although the case did not involve bad faith litigation, we conclude that its stated principles apply to the present issue. It enumerated the essential elements of the privilege as follows:

(1)   Where legal advice of any kind is sought
(2)   from a professional legal advisor in his capacity as such,
(3)   the communications relating to that purpose,
(4)   made in confidence
(5)   by the client,
(6)   are at this instance permanently protected
(7)   from disclosure by himself or by the legal adviser,
(8)   unless the protection be waived.

Admiral Ins., 881 F.2d at 1492.

Admiral Ins. involved securities fraud allegations against Admiral Ins. Co. Plaintiffs were investors. Attorneys hired by Admiral in anticipation of litigation deposed two of Admiral's corporate officers. Plaintiffs sought production of the interview statements because the two officers asserted the Fifth Amendment and refused to cooperate when plaintiff deposed them. Plaintiffs contended they were entitled to these statements since they had no other means to obtain this information. The district court ordered the interview statements produced.

The Ninth Circuit reversed, holding that an unavailability exception is inconsistent with the nature and purpose of

8

the privilege, and that the privilege is not to be confused with the work product rule, stating:

> While the work-product rule protects a client's investment in his attorney's labor to prevent unfair exploitation, the privilege protects communications between client and counsel to encourage the client to be forthcoming with his attorney so that appropriate legal advice can be offered. As Professor Saltzburg explained:
>
> > The principal difference between the attorney-client privilege and the work product doctrine, in terms of the protections each provides, is that the privilege cannot be overcome by a showing of need, whereas a showing of need may justify discovery of an attorney's work product.
>
> Saltzburg, Corporate and Related Attorney-Client Privilege: A Suggested Approach, 12 Hofstra, L.Rev. 279, 299 (1984).

Admiral Ins., 881 F.2d at 1494-95.

                    *         *         *

> The attorney-client privilege, like all other evidentiary privileges, may obstruct a party's access to the truth. Although it may be inequitable that information contained in privileged materials is available to only one side in a dispute, a determination that communications or materials are privileged is simply a choice to protect the communication and relationship against claims of competing interests. Any inequity in terms of access to information is the price the system pays to maintain the integrity of the privilege. An unavailability exception is, therefore, inconsistent with the nature and purpose of the privilege.

Admiral Ins., 881 F.2d at 1494.

In summary, Admiral Ins. held that the attorney-client privilege is to be distinguished from the protection given attorney work product. Whereas a showing of need may overcome the immunity given to work product, no showing of need can be invoked to overcome the privilege. It noted the

9

policy underlying the privilege which is to encourage the client to be open and frank with the attorney, and to enable the attorney to provide the best possible legal advice and to encourage the client to act in accordance with the law. While recognizing that the privilege denies access to these communications, the court held that the legal system's need for the privilege outweighs an asserted need for the information. We conclude that the reasoning of the Ninth Circuit in Admiral Ins. is compelling and correct. We therefore adopt its reasoning.

Plaintiffs contend that the privilege must give way in the context of bad faith litigation because the plaintiff must be able to determine whether the insurance company had a good faith basis for its decision. They urge that the requisite information includes knowledge of reliance on advice of counsel, and that if discovery is not permitted in the present case it will render the Unfair Trade Practices Act ineffectual. Plaintiff contends that the nature of the cause of action should control discoverability. We disagree and conclude that it is the nature of the relationship which is determinative.

Plaintiffs contend that their inability to discover these communications will impede the policy behind the Unfair Trade Practices Act. We conclude that the opposite is true. The attorney-client privilege allows for an honest, careful and prompt analysis by qualified persons. This enables the insurer to evaluate and settle a claim expeditiously and in this way furthers the policy behind the Act. The free flow of information between the attorney and client equally benefits the claimant because it is this kind of communication which results in the settlement of most insurance claims.

Normally, all communications between attorney and client, including conversations and phone calls, are

10

memorialized in writing. If these writings are all potentially discoverable, the impact on an attorney's ability to fully advise a client would be devastating. An insurance company must have an honest and candid evaluation of a case, possibly including a "worst case scenario." A concern by the attorney that communications would be discoverable in a bad faith suit would certainly chill open and honest communication. An attorney's inability to communicate freely with the client would impede all communications and could diminish the attorney's effectiveness. It could also impede settlements. We conclude that the need for the privilege outweighs any alleged need of the plaintiffs.

Plaintiffs rely on two decisions by Montana Federal District Courts, In re Bergeson (D.Mont. 1986), 112 F.R.D. 692, and Silva v. Fire Ins. Exchange (D.Mont. 1986), 112 F.R.D. 699, for their contention that the privilege must give way in bad faith insurance litigation. These decisions both involved a bad faith allegation by an insured against his own insurance company. They were thus "first-party" suits. The federal courts allowed discovery of attorney-client communications. The present case is a "third-party" suit since the plaintiff is a claimant rather than the insured. However, plaintiff contends that the same rule should apply.

We reject plaintiff's contention for two reasons. First, whether this information would be discoverable in first party bad faith litigation has not been decided by this Court. Second, there a valid distinction between a first party suit and a third party suit in insurance litigation. See, Baker v. CNA Ins. Co. (D.Mont. 1989) 123 F.R.D. 322. The relationship between the insurance company and its insured is fiduciary. No fiduciary relationship exists between an insurance company and a third party claimant, and an

11

adversarial relationship may exist. Thus plaintiff's argument is unpersuasive.

Plaintiff urges an exception to the privilege based on other theories such as civil fraud, citing Escalante v. Sentry Ins. (Wash.App. 1987), 743 P.2d 832, and United Services Automobile Assn. v. Werly (Alaska 1974), 526 P.2d 28. Both of these cases involved third party bad faith claims against an insurance company. The courts in these cases allowed the privilege to be defeated upon a prima facie showing of fraud after an in camera review. We reject the reasoning of those cases, which would extend the civil fraud exception to bad faith allegations. The civil fraud exception to the attorney-client privilege has traditionally been invoked where an attorney or client is involved in unlawful or criminal conduct, or future fraudulent activity. 2 J. Weinstein, Evidence § 503(d)(1)(01); Annot., 31 ALR 4th 458.

We agree with the Florida Court in Kujawa v. Manhattan Nat. Life Ins. Co. (Fla. 1989), 541 So.2d 1168, a bad faith insurance case, wherein the court stated that the "legislature in creating the bad faith cause of action did not evince an intent to abolish the attorney client privilege and work product immunity." Kujawa, 541 So.2d at 1169.

As a final argument, plaintiffs contend that USF&G waived the right to claim the privilege by its production of other letters between itself and the Gough firm. Specifically, they note that a letter which was produced contained a reference to the August 11 letter. They urge therefore that USF&G waived its right to claim that the letter of August 11 is privileged. While it is true that the privilege may be waived (§ 26-1-803, MCA), we do not agree that by the insurer's production of certain correspondence, it waived its right to withhold other correspondence. Nor does the reference to the August 11 letter require production of that

12

letter.  _See_ _generally_ 8 Wigmore, Evidence § 2327 (McNaughton Rev. 1961).

We decline to accept plaintiff's legal theories which would sweep aside the privilege.  As stated by the _Admiral Ins_. court, the exception urged by plaintiff would either "destroy the privilege or render it so tenuous and uncertain that it would be 'little better than no privilege at all.'  _Upjohn_, 449 U.S. at 353, 101 S.Ct. at 661."  _Admiral Ins._, 881 F.2d at 1495.  As should be apparent from our analysis, we have concluded that a balancing of the interests of all parties requires a conclusion that the attorney-client privilege must remain inviolate.  We vacate the District Court's denial of USF&G's motion for a protective order, and remand for entry of an appropriate protective order in regard to the three letters.

Justice

We Concur:

Chief Justice

Justices

13

No. 89-178

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

_____

STATE, ex rel., UNITED STATES FIDELITY
AND GUARANTY COMPANY,

        Relator,

   -vs-

THE MONTANA SECOND JUDICIAL DISTRICT
COURT, SILVER BOW COUNTY; and the
HONORABLE ARNOLD OLSEN, Presiding
Judge,

        Respondent.

_____

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

    For Relator:

        Robert J. Emmons argued, Great Falls, Montana

    For Respondent:

        Ross P. Richardson argued, Butte, Montana

    For Amicus Curiae:

        Robert F. James argued; James, Gray & McCafferty,
        (Farmers Union Mutual Ins.) Great Falls, Montana
        Randy J. Cox argued; Boone, Karlberg & Haddon,
        (Montana Defense Trial Lawyers), Missoula, Montana
        William Conklin argued & Allen P. Lanning, (State
        Farm Mutual Auto. Ins. Co.), Great Falls, Montana

_____

Submitted:    September 25, 1989

Decided:    November 15, 1989

_____
Clerk

FILED
Filed

'89 NOV 15 AM 11 00

ED SMITH, CLERK
MONTANA SUPREME COURT

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 89-178

STATE ex rel. UNITED STATES
FIDELITY AND GUARANTY COMPANY,

Relator,

v.

THE SECOND JUDICIAL DISTRICT
OF THE STATE OF MONTANA, IN
AND FOR THE COUNTY OF SILVER
BOW, and HONORABLE ARNOLD
OLSEN, Presiding judge,

Respondent.

)
)     O R D E R
)

'90 JAN 4 AM 11 28 FILED
ED SMITH, CLERK
MONTANA SUPREME COURT

Relator and amici curiae have filed herein a petition for rehearing in this cause, asking this Court to delete a certain statement from the Opinion filed in this cause on November 15, 1989. No objections to the petition for rehearing have been filed.

ACCORDINGLY, IT IS HEREBY ORDERED that the following paragraph, which begins on page 11 and ends on page 12 of this Court's Opinion of November 15, 1989, is deleted:

> We reject plaintiff's contention for two reasons. First, whether this information would be discoverable in first party bad faith litigation has not been decided by this Court. Second, there is a valid distinction between a first party suit and a third party suit in insurance litigation. See, Baker v. CNA Ins. Co. (D. Mont. 1989), 123 F.R.D. 322. The relationship between the insurance company and its insured is fiduciary. No fiduciary relationship exists between an insurance company and a third party claimant, and an adversarial relationship may exist. Thus plaintiff's argument is unpersuasive.

1

IT IS FURTHER ORDERED that the deleted paragraph is replaced by the following paragraph:

We reject plaintiff's contention for two reasons. First, whether this information would be discoverable in first party bad faith litigation has not been decided by this Court. Second, there is a valid distinction between a first party suit and a third party suit in insurance litigation. See, Baker v. CNA Ins. Co. (D. Mont. 1989), 123 F.R.D. 322.

Let remittitur issue forthwith.

DATED this __4 ᵀʰ__ day of January, 1990.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

2