FREEDOM TRUST; Federated Holdings Limited; et al., Plaintiffs,

v.

CHUBB GROUP OF INSURANCE COMPANIES, Defendant.

No. CV 97–1501 DDP (SHx).

United States District Court, C.D. California.

March 26, 1999.

Sassoon Sales, Sassoon Sales Law Offices, Los Angeles, CA, for Plaintiffs.

Alan J. Freisleben, Ralph Anthony Guirgis, Angela L. Ball, Sedgwick Detert Moran & Arnold, Irvine, CA, for Defendant Chubb Group of Ins. Cos.

## AMENDED ORDER DENYING PLAINTIFFS' MOTION TO COMPEL PRODUCTION

PREGERSON, District Judge.

This matter comes before the Court on a discovery motion by the plaintiffs. The motion presents a question of first impression in California: whether a law firm's participation in an insurer's bad faith denial of a claim falls within the crime-fraud exception to the lawyer-client privilege. The Court holds that it does not.

### I. Background

Among other claims, the plaintiffs sued Chubb for bad faith denial of insurance coverage. Chubb moved for summary judgment on this issue but the Court de-

nied the motion. The plaintiffs now assert that they have made a prima facie showing of bad faith and that this is sufficient to trigger the crime-fraud exception to the lawyer-client privilege. Therefore, the plaintiffs move to compel disclosure of Chubb's communications with its lawyers concerning the plaintiffs' insurance claim.

## II. Discussion

### A. Crime–Fraud Exception to Lawyer–Client Privilege

■ Because this is a civil action in which California law provides the rule of decision, Chubb's claim of privilege is governed by California law. Fed.R.Evid. 501; *Weinstein's Federal Evidence* § 501.02[2][b][ii]. California Evidence Code § 956 codifies the crime-fraud exception to the lawyer-client[1] privilege: "There is no privilege under this article if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud."

■ Under § 956, the lawyer does not have to be aware of the fraud for the crime-fraud exception to apply. Instead, the application of § 956 turns on the client's intent. *See People v. Clark*, 50 Cal.3d 583, 268 Cal.Rptr. 399, 425, 789 P.2d 127 (1990); *State Farm Fire and Cas. Co. v. Superior Ct. (Taylor)*, 54 Cal. App.4th 625, 62 Cal.Rptr.2d 834, 848 (1997).

■ To trigger the crime-fraud exception, a party must make a prima facie showing that the communication at issue furthered a crime or fraud. *See State Farm*, 62 Cal.Rptr.2d at 838. A prima facie case is "one which will suffice for

proof of a particular fact unless contradicted and overcome by other evidence. In other words, evidence from which reasonable inferences can be drawn to establish the fact asserted, i.e., the fraud." *BP Alaska Exploration, Inc. v. Superior Court (Nahama & Weagant)*, 199 Cal. App.3d 1240, 245 Cal.Rptr. 682, 696–97 (1988) (citing *People v. Van Gorden*, 226 Cal.App.2d 634, 38 Cal.Rptr. 265, 267 (1964)).

### B. Whether Bad Faith Falls Within the Crime–Fraud Exception

Because the Court denied Chubb's summary judgment motion on the bad faith issue, the plaintiffs have made a prima facie showing of bad faith.[2] The question presented here is whether bad faith vitiates the privilege because it is within the scope of the crime-fraud exception.

This question has created disagreement among the supreme courts of several states. *Compare, e.g., United Services Auto. Ass'n v. Werley*, 526 P.2d 28 (Alaska 1974) (prima facie evidence of bad faith triggers crime-fraud exception) *with State ex rel. U.S. Fidelity and Guaranty Co. v. Montana Second Judicial Dist. Ct.*, 240 Mont. 5, 783 P.2d 911 (1989) (evidence of bad faith cannot trigger crime-fraud exception); *Kujawa v. Manhattan Nat'l Life Ins. Co.*, 541 So.2d 1168 (Fla.1989) (bad faith does not abolish privilege). Research reveals no California decision addressing this issue. Because of this lack of guidance, the Court must predict how the California Supreme Court would determine this issue and apply the law in that manner. *See Comm'r of Internal Revenue v.*

---

1. This privilege is commonly known as the attorney-client privilege rather than the lawyer-client privilege. *See e.g., Black's Law Dictionary* 129 (6th ed.1990). A lawyer is a person learned in the law or in the business of giving advice, *see e.g., id.* at 888; *Webster's II New Riverside University Dictionary* 680 (1994), while an attorney is a lawyer who has been retained to assist a client, *see e.g., Black's, supra* at 128–29; *Webster's II, supra,* at 136. Therefore, the more accurate denomination would be "attorney-client privilege".

Nevertheless, because the California Evidence Code refers to this privilege as the "lawyer-client privilege," *see e.g.,* Cal.Evid.Code § 954, the Court will do likewise.

2. Because the plaintiffs would bear the burden of proof at trial, the denial of Chubb's motion for summary judgment indicates that the plaintiffs have made a prima facie showing. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

*Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

The California Supreme Court would not agree with those courts that hold that bad faith falls within the scope of the crime-fraud exception. This conclusion is based on the language and history of California Evidence Code § 956, consideration of the fundamental differences between fraud and bad faith, and inferences drawn from California cases.

### 1. Language and History of § 956

The plain language of § 956 encompasses only "a crime or a fraud." The word "fraud" in this exception to the privilege includes civil fraud. *See, e.g., Dickerson v. Superior Ct. (Ferrito),* 135 Cal.App.3d 93, 185 Cal.Rptr. 97, 100–01 (1982); 31 A.L.R.4th 458, 1984 WL 263391 (1981). However,

> [t]he courts generally, including those of [California], have limited the exceptions to contemplated crimes or fraud. In commenting on this question Mr. Witkin, [California Evidence, § 420, p. 470], points out that to go beyond the conventional exceptions would open up "too large an area of nullification of the privilege, and, in view of the wide variety of torts and the technical character of many, presents difficult problems for an attorney consulting with his client."

*Nowell v. Superior Court,* 223 Cal.App.2d 652, 36 Cal.Rptr. 21, 25 (1963).

In 1965, this limitation was endorsed by the California Law Revision Commission in its report to the Legislature concerning § 956. The Commission stated:

> Subdivision (4)(a)—Crime or fraud. Paragraph (a) of subdivision (4) provides that the privilege does not apply where the legal service was sought or obtained in order to enable or aid the client to commit or plan to commit a crime or to perpetrate or plan to perpetrate a fraud. California recognizes this exception insofar as future criminal or fraudulent activity is concerned. *Abbott v. Superior Court,* 78 Cal.App.2d 19, 177 P.2d 317 (1947). URE [i.e., Uniform Rules of Evidence] Rule 26 extends this exception to bar the privilege in case of consultation with the view to commission of *any tort.* The Commission has not adopted this extension of the traditional scope of this exception. Because of the wide variety of torts, and the technical nature of many, extension of the exception to include all torts would present difficult problems for and attorney consulting with his client and would open too large an area for nullification of the privilege. A recent California decision similarly rejected this extension of the privilege. *Nowell v. Superior Court,* 223 Cal.App.2d 652, 36 Cal.Rptr. 21 (1963).

*Cal.Law Revision Comm'n Tent. Rec. and Study Relating to The URE: Art. V. Privileges* 226 (1964) (emphasis and citations as in original).

California's intentional exclusion of torts from § 956 is further evidenced by the State's explicit inclusion of torts in exceptions to privileges other than the lawyer-client privilege: The physician-patient privilege does not apply "if the services of the physician were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a tort...." Cal.Evid. Code § 997. The same is true regarding California's psychotherapist-patient privilege. Cal.Evid.Code § 1018. That these sections explicitly apply to all torts supports the conclusion that § 956's use of the word "fraud" was intended to limit the scope of the crime-fraud exception.

### 2. Fundamental Differences Between Fraud and Bad Faith

While some courts have equated bad faith with civil fraud and therefore applied the exception to both, *see, e.g., United Services,* 526 P.2d at 33, there is no persuasive reason to distinguish bad faith from other intentional torts. Bad faith denial of insurance coverage means simply that the insurer breached an implied contractual agreement to act faithfully to an agreed common purpose consistent with

the reasonably justified expectations of the other party. *See* Croskey, et al., *California Practice Guide: Insurance Litigation* ¶ 12:28.5 (TRG 1997) (citing *Neal v. Farmers Ins. Exch.*, 21 Cal.3d 910, 148 Cal.Rptr. 389, 395 n. 5, 582 P.2d 980 (1978)). This need not implicate false or misleading statements by the insurer. For example, an insurer may act in bad faith if it simply denies coverage without any explanation. The gravamen of fraud, however, is falsity. *See, e.g., Black's Law Dictionary* 660 (6th ed.1990) (fraud is "[a]n intentional perversion of the truth"). Thus, bad faith denial of insurance coverage is not inherently similar to fraud.[3] If so, there is no persuasive reason to include bad faith in the fraud exception to the lawyer-client privilege.

### 3. Indications From California Decisions

While this Court's determination of California law is not bound by decisions of California appellate courts, such decisions "should be 'attributed some weight.'" *Bosch*, 387 U.S. at 465, 87 S.Ct. 1776. Consideration of these decisions supports the previous conclusion that bad faith denial of insurance coverage is not within the scope of California's crime-fraud exception to the lawyer-client privilege.[4]

For example, in *BP Alaska*, a California appellate court considered whether the crime-fraud exception applied to certain lawyer-client communications. Significantly, the court discussed the elements of civil fraud and held that

where an attorney's services are sought to enable a party to plan to commit a fraud, the proponent of the exception need only to prove a false representation of a material fact, knowledge of its falsity, intent to deceive and the right to rely. (This means, of course, that a negligent fraud under Civil Code sections 1572 and 1710 will not suffice.)

*BP Alaska*, 245 Cal.Rptr. at 697. The court then strictly applied these elements to the communications at issue. *See id.* at 697–99.[5]

Such strict application of the essential elements of civil fraud implies a literal reading of the word "fraud" in § 956. This contradicts the conclusion of the Alaska Supreme Court that the crime-fraud exception includes bad faith because fraud is "as broad and as varied as the human mind can invent." *See Central Constr. Co. v. Home Indemnity Co.*, 794 P.2d 595, 598 (Alaska 1990). Therefore, the California decision in *BP Alaska* is not consistent with the Alaska decisions finding bad faith within the crime-fraud exception.

Other California decisions are also inconsistent with the conclusion that bad faith falls within the crime-fraud exception. While Alaska based its decision on the principle that "[p]ublic policy demands that the 'fraud' exception to the attorney-client privilege ... be given the broadest interpretation," *Central Constr.*, 794 P.2d at 598, the California Supreme Court has disagreed with this premise: "Cases decided since the adoption of the Evidence Code recognize the limited nature of the excep-

---

**3.** Even courts that find bad faith within the crime-fraud exception have difficulty equating bad faith with fraud. Ultimately, these courts simply make a policy decision that bad faith should not be protected by the lawyer-client privilege. *See, e.g., United Services*, 526 P.2d at 33 (finding bad faith to be fraud because allowing bad faith to be privileged "seems clearly inappropriate"); *Central Constr. Co. v. Home Indem. Co.*, 794 P.2d 595, 598 (Alaska 1990) (finding bad faith to be fraud only because "[a]cts constituting fraud are as broad and as varied as the human mind can invent" and "[p]ublic policy demands that the 'fraud'

exception to the attorney-client privilege ... be given the broadest interpretation").

**4.** This is not meant to imply that an insurer cannot engage in activities that implicate both bad faith denial of coverage and fraud. Rather, it means only that simple bad faith is not per se within the crime-fraud exception.

**5.** In *Cunningham v. Connecticut Mut. Life Ins.*, 845 F.Supp. 1403 (S.D.Cal.1994), the court also strictly evaluated the elements of civil fraud when considering a motion to compel production under § 956.

tion to the attorney-client privilege created by Evidence Code section 956," *Clark*, 268 Cal.Rptr. at 425, 789 P.2d 127; *see also Geilim v. Superior Ct. (People)*, 234 Cal. App.3d 166, 285 Cal.Rptr. 602, 607 (1991) (noting that § 956 "is a very limited exception"). Thus, the broad interpretation of the crime-fraud exception, which includes bad faith, is inconsistent with California authority.

### 4. Conclusion as to Appropriateness of a Bad–Faith Exception to § 956

 The plaintiffs ask this Court to extend the crime-fraud exception to cover allegations of bad faith.[6] However, the plain language and legislative history of § 956 support the literal interpretation of the word "fraud," as does the fact that cases applying the exception do so in a strict, element-based manner. Additionally, the California Supreme Court has recognized the limited scope of § 956. Based on these factors, the Court concludes that the California Supreme Court would hold that a prima facie showing of bad faith does not trigger the crime-fraud exception of § 956. Therefore, the plaintiffs' motion is denied.

IT IS SO ORDERED.

---

**6.** In addition to their argument asserting bad faith, the plaintiffs also assert that Chubb engaged in actual fraud. These assertions are deficient, however, because the plaintiffs fail to make, or even attempt to make, a prima facie showing that they satisfy the elements of any of these theories. For example, the plaintiffs do not identify any alleged false statement by Chubb.

As to the plaintiffs' claim of promissory fraud, the plaintiffs fail to allege that Chubb intended not to perform in good faith at the time the insurance contract was entered into. *See* BAJI Inst. No. 12.40 (essential element of false promise that "at the time it was made, [the defendant] must have intended not to perform it").

Therefore, none of the plaintiffs' theories of actual fraud are sufficient to trigger the crime-fraud exception.