[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 209.]

BOONE, APPELLANT, *v*. VANLINER INSURANCE COMPANY, APPELLEE.

[Cite as *Boone v. Vanliner Ins. Co.*, 2001-Ohio-27.]

*Insurance—Action alleging bad faith denial of insurance coverage—Insured entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage.*

(No. 00-104—Submitted October 18, 2000—Decided April 4, 2001.)

APPEAL from the Court of Appeals for Franklin County, No. 98AP-1535.

————————————

SYLLABUS OF THE COURT

In an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage.

————————————

DOUGLAS, J.

{¶ 1} Appellant, Richard Boone, is an over-the-road truck driver and a resident of Ohio. Appellee, Vanliner Insurance Company ("Vanliner"), issued a commercial vehicle liability insurance policy to Boone, individually, and a separate policy to Boone's employer. Each policy of insurance provided $1,000,000 liability coverage. Boone's employer's policy also provided $1,000,000 uninsured/underinsured motorist coverage and Boone's policy listed uninsured/underinsured motorist coverage in the amount of $50,000.

{¶ 2} On June 12, 1995, Boone was in Tampa, Florida, transporting goods for his employer when he was involved in a three-vehicle accident. Boone, driving a tractor-trailer, was travelling behind a dump truck driven by Robert Allison, when

Brett Verona, the operator of the third vehicle, lost control while attempting to change lanes. Due to Verona's negligence, Allison was unable to prevent his vehicle from colliding with Verona's. Boone's attempt to avoid hitting Allison's truck was also unsuccessful.

{¶ 3} As a result of the accident, Boone suffered serious injuries, including bilateral fractures of both knees. Verona's insurer paid $100,000, the limit of Verona's liability coverage, toward Boone's damages. Boone, alleging that his damages exceeded $100,000, subsequently sought underinsured motorist benefits from Vanliner through his employer's policy of insurance. Vanliner denied Boone's claim, asserting that an exclusion provision in the policy precluded underinsured motorist coverage with regard to Boone's accident.

{¶ 4} On June 12, 1997, Boone brought a declaratory judgment action against Vanliner seeking a determination that his policy and his employer's policy of insurance with Vanliner each provided him with $1,000,000 in uninsured/underinsured motorist coverage. With regard to his individual policy, Boone alleged that he was entitled to $1,000,000 uninsured/underinsured coverage by operation of law because Vanliner had failed to obtain a written waiver of uninsured/underinsured coverage in an amount equal to his liability insurance as required by Ohio law. The complaint included a claim for bad faith,[1] alleging that Vanliner lacked reasonable justification for denying underinsured motorist coverage. To support his bad faith claim, Boone sought access, through discovery, to Vanliner's claims file.

{¶ 5} In its answer to Boone's complaint, Vanliner denied that Boone was entitled to uninsured/underinsured motorist benefits under either policy. However, Vanliner subsequently changed its position and admitted that each policy of

---

1. An insurer's lack of good faith in the processing of a claim is frequently referred to as "bad faith." Such conduct gives rise to a cause of action in tort against the insurer. *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315, paragraph one of the syllabus.

insurance provided Boone with $1,000,000 of uninsured/underinsured motorist coverage. Vanliner subsequently moved the court for a protective order with regard to numerous documents in its claims file. In its motion, Vanliner contended that several documents were protected from discovery by the attorney-client privilege and/or work-product doctrine.[2]

{¶ 6} The trial court ordered Vanliner to submit its claims file to the court for an *in camera* inspection to determine which documents, if any, were protected from discovery. The claims file consists of 1,741 documents numbered "0" through "1741."[3] The trial court found that one hundred seventy-five of the documents were protected from discovery and ordered Vanliner to release the unprotected documents to Boone.[4] In determining which documents were protected, the trial court applied our ruling in *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331, wherein we held that certain attorney-client communications

---

2. The attorney-client privilege exempts from the discovery process certain communications between attorneys and their clients. The privilege has long been recognized by the courts, *Upjohn Co. v. United States* (1981), 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584, 591; *Moskovitz, infra,* 69 Ohio St.3d at 660, 635 N.E.2d at 349, and "[i]ts purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn* at 389, 101 S.Ct. at 682, 66 L.Ed.2d at 591.

Work product consists of "documents and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative" and may be discovered only upon a showing of good cause. Civ.R. 26(B)(3). This rule is often referred to as the "work-product doctrine." The purpose of the work-product doctrine is "to prevent an attorney from taking undue advantage of his adversary's industry or efforts." Civ.R. 26(A)(2).

Vanliner also argued that certain claims file documents were not discoverable because they were not relevant to the bad faith claim. The trial court did not accept this argument and Vanliner did not appeal that aspect of the trial court's ruling.

3. The claims file documents are actually stamped "000000" through "001741." Throughout this opinion reference to specific documents will be by number without the preceding zeros.

We also note that there is no document numbered 929 in the claims file. According to Vanliner, this is due to a numbering error.

4. The trial court held that the following documents were protected from discovery: 883, 884, 891, 893-895, 898, 910-928, 930, 932-984, 1015, 1033-1043, 1049, 1051-1077, 1085-1091, 1094-1098, 1101-1102, 1109-1114, 1124-1150, 1251, 1256, 1257, and 1258, and portions of documents numbered 858, 859, 861, and 862.

and work-product materials in an insurer's claims file were not protected from discovery by the attorney-client privilege or work-product doctrine.

{¶ 7} Upon appeal[5] to the Tenth District Court of Appeals, Vanliner argued that the trial court erred in applying *Moskovitz* and that, as a result, the trial court incorrectly ordered Vanliner to disclose thirty documents that are protected by the attorney-client privilege and/or work-product doctrine. The court of appeals agreed with Vanliner's argument that *Moskovitz* was inapplicable. Consequently, the court found that of the thirty claims file documents challenged on appeal, Vanliner was required to disclose only one in its entirety. The court accepted Vanliner's argument that the remaining twenty-nine were privileged either in whole or in part. Accordingly, the court of appeals affirmed in part and reversed in part the order of the trial court and remanded the cause to the trial court.[6]

{¶ 8} This cause is now before this court pursuant to the allowance of a discretionary appeal.

{¶ 9} The issue before us is whether, in an action alleging bad faith denial of insurance coverage, the insured is entitled to obtain, through discovery, claims

---

5. While the issue was apparently not raised by appellant either in the court of appeals or in this court, we note in passing, and without deciding, that there could be a question of whether this case, involving solely a discovery issue, met the requirements for a final appealable order as set forth in R.C. 2505.02(B)(4) and, in particular, (B)(4)(b).

6. Upon the court of appeals' remand of this case to the trial court, the trial court issued a new order, which stated, "Pursuant to the Court of Appeals' Decision rendered December 2, 1999, the Court's November 10, 1998 Entry is hereby modified to indicate that [Vanliner] must produce only the following documents contained in the claims file: 597, 598, 600, and 601 with requested redactions, and 599."

This entry of the trial court is misleading because the order says that it modifies the trial court's order of November 10, 1998, so that only five documents from the insurer's claims file must be produced. However, the trial court's November 10, 1998 entry ordered Vanliner to produce over fifteen hundred claims file documents. Vanliner appealed, and the court of appeals addressed, the trial court's November 10, 1998 order *only with respect to thirty documents*. Thus, the entry upon remand should have reflected that it modified the November 10, 1998 entry only as to those documents at issue in the appeal.

file documents containing attorney-client communications and work product that may cast light on whether the denial was made in bad faith.

{¶ 10} As already indicated, the trial court relied on our decision in *Moskovitz* to determine which claims file documents were protected from discovery. In *Moskovitz*, after receiving a substantial jury award for a medical malpractice claim, the plaintiffs sought prejudgment interest as authorized by R.C. 1343.03(C). *Id.*, 69 Ohio St.3d at 647-648, 635 N.E.2d at 340-341. To be successful in an R.C. 1343.03(C) proceeding, the prevailing party of the underlying case must prove, among other things, that the opposing party did not make a good faith effort to settle the case. With regard to this prong of R.C. 1343.03(C), *Moskovitz* sought to clarify the extent of a plaintiff's right to discovery of the malpractice insurer's claims file in light of the attorney-client privilege and the work-product doctrine. We stated that "[d]ocuments and other things showing the lack of a good faith effort to settle by a party or the attorneys acting on his or her behalf are wholly unworthy of the protections afforded by any claimed privilege." *Id.* at 661, 635 N.E.2d at 349. Thus, we held that "[i]n an R.C. 1343.03(C) proceeding for prejudgment interest, neither the attorney-client privilege nor the so-called work product exception precludes discovery of the contents of an insurer's claims file. The only privileged matters contained in the file are those that go directly to the theory of defense of the underlying case in which the decision or verdict has been rendered." *Id.* at paragraph three of the syllabus.

{¶ 11} Boone argues that claims file materials showing an insurer's lack of good faith in determining coverage are equally unworthy of protection. Thus, Boone argues that the trial court was correct in applying *Moskovitz* to the claims file documents in this case.

{¶ 12} Vanliner, on the other hand, asks us to affirm the court of appeals' decision, which held that *Moskovitz* was not applicable in the present action. The court of appeals found the distinguishing factor between this case and *Moskovitz* to

be the status of the underlying claim. Specifically, the court of appeals noted that in the case at bar the underlying claim (underinsured motorist damages) is still pending, whereas in *Moskovitz* the underlying claim (medical malpractice) had already been decided.

{¶ 13} We find that the court of appeals, in this regard, misread our decision. Our ruling in *Moskovitz* did not turn on the status of the underlying claim, but rather upon our recognition that certain attorney-client communications and work-product materials were undeserving of protection, *i.e.*, materials "showing the lack of a good faith effort to settle." *Moskovitz* at 661, 635 N.E.2d at 349. Moreover, this "distinction" could easily be eliminated by staying the bad faith claim until the underlying claim has been determined.

{¶ 14} Vanliner argues that *Moskovitz* must be viewed in light of our subsequent holding in *State v. McDermott* (1995), 72 Ohio St.3d 570, 651 N.E.2d 985, so that even if our ruling in *Moskovitz* is applicable to attorney-client communications in the present case, *McDermott* requires that they be protected. We disagree.

{¶ 15} In *McDermott*, we held that R.C. 2317.02(A) provides the exclusive means by which privileged attorney-client communications can be waived by the client. *Id*. at syllabus. The flaw in Vanliner's argument is that *McDermott* addresses client *waiver* of the privilege, whereas *Moskovitz* sets forth an *exception* to the privilege and is therefore unaffected by our holding in *McDermott*.

{¶ 16} Vanliner further contends that if insureds alleging bad faith are able to access certain attorney-client communications within the claims file, then insurers will be discouraged from seeking legal advice as to whether a certain claim is covered under a policy of insurance. This argument is not well taken because it assumes that insurers will violate their duty to conduct a thorough investigation by failing, when necessary, to seek legal counsel regarding whether an insured's claim

6

is covered under the policy of insurance, in order to avoid the insured later having access to such communications, through discovery.

{¶ 17} Vanliner further argues that the release of the documents at issue in this case will undermine its ability to defend on the underlying underinsured motorist claim that remains pending. We find this argument unpersuasive. If this were a legitimate concern, we believe that Vanliner would have moved the trial court to stay the bad faith claim, severing it from the underlying underinsured motorist claim. Our review of the record in this case reveals that Vanliner took no such action.

{¶ 18} Like the trial court, we find that the rationale behind our holding in *Moskovitz* is applicable to actions alleging bad faith denial of coverage. That is, claims file materials that show an insurer's lack of good faith in denying coverage are unworthy of protection. It appears, however, that in determining which documents were protected in this case, the trial court applied the specific holding in *Moskovitz*, *i.e*., only those documents containing attorney-client communications and work product that go directly to the theory of defense of the underlying claim are protected. We find this holding inapplicable in the present case because, while the lack of a good faith effort to settle involves conduct that may continue throughout the entire claims process, a lack of good faith in determining coverage involves conduct that occurs when assessment of coverage is being considered. Therefore, the only attorney-client and work-product documents that would contain information related to the bad faith claim, and, thus, be unworthy of protection, would have been created prior to the denial of coverage.

{¶ 19} For the foregoing reasons, we hold that in an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage. At that stage of the claims handling, the claims file materials will not contain work product, *i.e*., things prepared in

anticipation of litigation, because at that point it has not yet been determined whether coverage exists. Of course, if the trial court finds that the release of this information will inhibit the insurer's ability to defend on the underlying claim, it may issue a stay of the bad faith claim and related production of discovery pending the outcome of the underlying claim.

{¶ 20} We now turn to the specific documents at issue herein. Out of the 1,741 documents contained in the claims file, the issue before us concerns only twenty-nine documents, namely documents numbered 581, 582, 597, 598, 600, 601, 676, 677, 885, 886, 887, 888, 889, 890, 892, 896, 899, 900, 902, 903, 904, 905, 906, 907, 1106, 1107, 1151, 1152, and 1153. Although the trial court ordered Vanliner to produce over fifteen hundred claims file documents, Vanliner's appeal sought to protect only thirty of these documents and was successful as to twenty-nine.

{¶ 21} The court of appeals found, and we agree, that the trial court's ruling was inconsistent with respect to eight claims file documents. Specifically, the trial court ordered Vanliner to produce documents numbered 597, 598, 600, and 601 *without* Vanliner's requested redactions but ordered Vanliner to produce documents numbered 858, 859, 861, and 862 *with* the requested redactions. This was inconsistent because the information ordered to be redacted from documents numbered 858, 859, 861, and 862 was identical to the information requested to be redacted from 597, 598, 600, and 601.

{¶ 22} We do not agree, however, with the court of appeals' approach to resolving this inconsistency. The court found that "[d]ocuments 597, 598, 600 and 601 are simply duplicates of documents 858, 859, 861 and 862" and held that "[s]ince these documents are duplicates, the trial court erred in not ordering similar redactions of 597, 598, 600 and 601."[7] From this statement it would appear that

---

7. The court of appeals' statement that "[d]ocuments 597, 598, 600 and 601 are simply duplicates of documents 858, 859, 861 and 862" is not correct. While the information contained in the portions

the content of these documents was not independently evaluated and that it was assumed that because the trial court ordered the information to be redacted in some documents its mistake was in not ordering the same information redacted in others. We find this analysis flawed because it does not consider the possibility that the trial court's mistake was actually in permitting the redaction of the information.

{¶ 23} Upon review of these documents in light of our foregoing holding, we find that two of them, namely, documents numbered 600 and 601, should be released *without* redactions to Boone. These documents were created prior to the denial of coverage and the information that Vanliner requested be redacted in these two documents, some of which reflects attorney-client communication, relates to the issue of insurance coverage. Therefore, documents numbered 600 and 601 should be produced without redactions (which makes the redactions ordered in documents numbered 858 and 859 moot).

{¶ 24} Documents numbered 597 and 598 contain the name of an attorney with the language "We can explore with atty Maddox" and "Check with atty Maddox." These documents were communications, it would appear, between two of Vanliner's claims employees. Vanliner's attorney was, apparently, not involved in these communications on the issue in question. Therefore, we find that documents numbered 597 and 598 do not contain attorney-client communications. Consequently, the information contained in these documents is not protected by the attorney-client privilege and should be disclosed without redactions (which makes the redactions ordered in documents numbered 861 and 862 moot).

{¶ 25} As to the remaining documents at issue in this appeal, those documents contain attorney-client communications and/or work product that were created after coverage was denied. They are, therefore, protected from discovery.

---

Vanliner requested to be redacted is the same in document number 597 as in 862, 598 as in 861, 600 as in 859, and 601 as in 858, the documents themselves are not duplicates of each other.

**{¶ 26}** Accordingly, for the foregoing reasons, we affirm in part and reverse in part the judgment of the court of appeals, and remand this cause.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

———————————

**COOK, J., dissenting.**

**{¶ 27}** The majority today adopts a wholesale exception to the attorney-client privilege in actions alleging bad-faith denial of insurance coverage. The majority concludes that "claims file materials that show an insurer's lack of good faith in denying coverage are unworthy of protection." Because the majority's broad holding diminishes the attorney-client privilege without a reasoned basis for doing so, I dissent.

**{¶ 28}** The majority cites no authority for the proposition that attorney-client communications leading to a denial of insurance coverage are not protected from disclosure in a subsequent action alleging bad faith. Instead, the majority relies on *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331, which allowed discovery of otherwise privileged materials in an R.C. 1343.03(C) proceeding seeking prejudgment interest. The *Moskovitz* court supported its decision by declaring documents showing lack of good-faith effort to settle "wholly unworthy" of any privilege. *Id.* at 661, 635 N.E.2d at 349.

**{¶ 29}** The majority extends the *Moskovitz* rationale to this case, deciding that claims file materials showing an insurer's lack of good faith in denying coverage are similarly unworthy of protection by the attorney-client privilege. But the "unworthy of protection" rationale espoused by the majority was unsupported in *Moskovitz* and is unsupported now.

{¶ 30} The attorney-client privilege "is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.' " *Swidler & Berlin v. United States* (1998), 524 U.S. 399, 403, 118 S.Ct. 2081, 2084, 141 L.Ed.2d 379, 384, quoting *Upjohn Co. v. United States* (1981), 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584, 591; see, also, *In re Klemann* (1936), 132 Ohio St. 187, 190-191, 7 O.O. 273, 275, 5 N.E.2d 492, 493-494. Although the privilege may suppress relevant evidence, its existence is justified by the perceived long-term social benefits of open communication between lawyer and client. See 1 Rice, Attorney-Client Privilege in the United States (2 Ed.1999) 18, Section 2:3. The law will not allow the privilege, however, when the attorney-client relationship is abused. *Id.* at 22-24, Section 8:2; see, also, *Clark v. United States* (1933), 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993, 1000. Accordingly, there is a well-established "crime-fraud exception," which denies the protection of the privilege when the client communicates with an attorney for the purpose of committing or continuing a crime or fraud. *State ex rel. Nix v. Cleveland* (1998), 83 Ohio St.3d 379, 383, 700 N.E.2d 12, 16. Communications in furtherance of a crime or fraud do not further the goals of the attorney-client privilege and are therefore undeserving of protection. See *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983* (C.A.2, 1984), 731 F.2d 1032, 1038.

{¶ 31} With its "unworthy of protection" rationale, the majority effectively equates an insurer's communications with its attorney prior to a denial of coverage, in any case alleging bad faith, with communications in furtherance of a civil fraud. But bad faith by an insurer is conceptually different from fraud. Bad-faith denial of insurance coverage means merely that the insurer lacked a "reasonable justification" for denying a claim. *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397, paragraph one of the syllabus. In contrast, an actionable claim of fraud requires proof of a false statement made with intent to mislead. See

*Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus. Proof of an insurer's bad faith in denying coverage does not require proof of any false or misleading statements; an insurer could, for example, act in bad faith by denying coverage without explanation. *Freedom Trust v. Chubb Group of Ins. Cos.* (C.D.Cal.1999), 38 F.Supp.2d 1170, 1173. Because bad faith is not inherently similar to fraud, there is no reason why an allegation of bad faith should result in an exception to the attorney-client privilege akin to the crime-fraud exception. *Id.*

{¶ 32} The majority's holding is also startling for its practical effect. After today's decision, an insured need only *allege* the insurer's bad faith in the complaint in order to discover communications between the insurer and the insurer's attorney. Not even an allegation of the crime-fraud exception's applicability carries such an absolute entitlement to discovery of attorney-client communications. In order to overcome the attorney-client privilege based on the crime-fraud exception, a party must demonstrate "a factual basis for a showing of probable cause to believe that a crime or fraud has been committed and that the communications were in furtherance of the crime or fraud." *Nix*, 83 Ohio St.3d at 384, 700 N.E.2d at 16. The rule created today requires no similar prima facie showing of bad faith before an insured is entitled to discover attorney-client communications of the insurer. The result of the majority's decision is a categorical exception to the attorney-client privilege applicable in *any* case alleging a bad-faith denial of insurance coverage. This is a sweeping exception that a number of courts have refused to adopt.[8] The

8. See, *e.g.*, *Dion v. Nationwide Mut. Ins. Co.* (D.Mont.1998), 185 F.R.D. 288, 294 (applying Montana law); *Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co.* (D.Mass.1997), 173 F.R.D. 7, 11 (applying Massachusetts law); *Dixie Mill Supply Co., Inc. v. Continental Cas. Co.* (E.D.La.1996), 168 F.R.D. 554, 558 (applying Louisiana law); *Tackett v. State Farm Fire & Cas. Ins. Co.* (Del.1995), 653 A.2d 254, 259-260 (declining to create a "per se waiver" of privilege in bad-faith cases); *Aetna Cas. & Sur. Co. v. San Francisco Superior Court* (1984), 153 Cal.App.3d 467, 476-477, 200 Cal.Rptr. 471, 477 (that insurer's "state of mind" is at issue in bad-faith action does not justify an exception to privilege); *Hartford Fin. Serv. Group*, *infra,* 717 N.E.2d at 1235-1236 (relying on *Aetna* to reject exception to privilege in bad-faith cases). See, also, *Maryland Am.*

majority has simply decided that insurance-bad-faith cases should be treated differently as far as the attorney-client privilege is concerned, ignoring that "[t]he nature of the relationship, not the nature of the cause of action, controls whether communications between attorney and client can be discovered." *Palmer v. Farmers Ins. Exch.* (1993), 261 Mont. 91, 108, 861 P.2d 895, 906.

**{¶ 33}** Deeming the insurer's communications unworthy of the attorney-client privilege is also inconsistent with the very purpose of the privilege. As noted previously, the privilege is designed to encourage open discussion between attorney and client, so as to promote the observance of the law and allow an attorney to adequately advise the client. With today's decision, the majority declares that an insurer's consultation with an attorney prior to a denial of coverage does not fall within this purpose. The rule laid down today assumes that an insurer will always have some sinister intent to act in bad faith when it discusses a coverage decision with its attorney. But the majority overlooks the fact that an insurance company may consult with legal counsel to obtain legal advice about a coverage decision. "[A]n insurance company's retention of legal counsel to interpret the policy, investigate the details surrounding the damage, and to determine whether the insurance company is bound for all or some of the damage, is a 'classic example of a client seeking legal advice from an attorney.' " *Hartford Fin. Serv. Group, Inc. v. Lake Cty. Park & Recreation Bd.* (Ind.App.1999), 717 N.E.2d 1232, 1236, quoting *Aetna Cas. & Sur. Co. v. San Francisco Superior Court* (1984), 153 Cal.App.3d 467, 476, 200 Cal.Rptr. 471, 476. These types of communications further the purpose of the attorney-client privilege and should be protected in the same manner as a communication by any other client seeking legal advice from an attorney.

---

*Gen. Ins. Co. v. Blackmon* (Tex.1982), 639 S.W.2d 455, 458 ("if a plaintiff attempting to prove the validity of a claim against an insurer could obtain the insurer's investigative files merely by alleging the insurer acted in bad faith, all insurance claims would contain such allegations").

**{¶ 34}** An insurance company that seeks legal advice from an attorney about a coverage issue will now have to consider the possibility that those communications will be subject to future disclosure in the event that coverage is denied and the insured commences a bad-faith lawsuit. As one appellate court has observed, a rule such as the one announced today threatens the open and honest discourse between attorney and client that the privilege is supposed to protect:

"[A]n insurance company should be free to seek legal advice in cases where coverage is unclear without fearing that the communications necessary to obtain that advice will later become available to an insured who is dissatisfied with a decision to deny coverage. A contrary rule would have a chilling effect on an insurance company's decision to seek legal advice regarding close coverage questions, and would disserve the primary purpose of the attorney-client privilege—to facilitate the uninhibited flow of information between lawyer and client so as to lead to an accurate ascertainment and enforcement of rights." *Aetna*, 153 Cal.App.3d at 474, 200 Cal.Rptr. at 475; see, also, *State ex rel. United States Fid. & Guar. Co. v. Montana Second Judicial Dist. Court* (1989), 240 Mont. 5, 13, 783 P.2d 911, 916. The majority's decision here discounts these concerns based on its unsupported "unworthy of protection" rationale.

**{¶ 35}** For these reasons, I cannot join the majority's unsound decision to declare a whole species of communications undeserving of protection by the attorney-client privilege. I would treat bad-faith cases no differently from any other case and regard attorney-client communications as privileged when those communications satisfy all elements of the privilege. This would not mean, of course, that an insurer would *never* have to disclose the substance of attorney-client communications in bad-faith cases. An exception to the attorney-client privilege already exists, for example, when an attorney jointly represents both the insured and the insurer. When an attorney has represented the common interests of insurer and insured, one joint client (the insurer) cannot assert the privilege in litigation

against another joint client (the insured). *Netzley v. Nationwide Mut. Ins. Co.* (1971), 34 Ohio App.2d 65, 77-78, 63 O.O.2d 127, 134-135, 296 N.E.2d 550, 561-562; *Palmer*, 261 Mont. at 108, 861 P.2d at 905.[9] Moreover, if an insured asserting a bad-faith claim makes a prima facie showing of *fraudulent* conduct, the crime-fraud exception may allow piercing the attorney-client privilege as to certain claims file materials. See *Barry v. USAA* (1999), 98 Wash.App. 199, 205, 989 P.2d 1172, 1176. Courts have also recognized that an insurer in a bad-faith case may impliedly waive the privilege altogether by raising an advice-of-counsel defense, thereby placing its attorney-client communications directly at issue. *Palmer*, 261 Mont. at 110, 861 P.2d at 907; *Transamerica Title Ins. Co. v. Santa Clara Cty. Superior Court* (1987), 188 Cal.App.3d 1047, 1053, 233 Cal.Rptr. 825, 829. Unlike the majority's rationale, these limitations on the attorney-client privilege are well supported and consistent with the policy behind the privilege.

**{¶ 36}** I would affirm the judgment of the court of appeals and accordingly dissent.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing dissenting opinion.

---

9. Bad-faith cases involving the joint-client exception often arise after an insured becomes liable for a judgment in excess of the insured's liability policy limits and later sues the insurer for failure to settle within the policy limits. See *Palmer*, 261 Mont. at 108, 861 P.2d at 905. During the course of the underlying litigation between the insured and the third party, the insurer has typically engaged an attorney to defend the insured. Thus, an attorney has represented two clients (insured and insurer) who theoretically shared a common interest, *i.e.*, defending a claim against a third party. This exception would not apply to a case alleging bad-faith denial of uninsured/underinsured motorist ("UM/UIM") coverage. In UM/UIM claims, the insured claimant and the insurer are in adversarial positions from the outset: while the insured's interest is in obtaining UM/UIM coverage, the insurer's interest is inevitably aligned with that of the alleged third-party tortfeasor. *Id.* at 108, 861 P.2d at 905-906. This adversarial relationship would render communications between the insurer and its attorney concerning a UM/UIM claim protected by the attorney-client privilege for purposes of the insured's bad-faith suit. *Id.*, 261 Mont. at 108, 861 P.2d at 906; *Barry v. USAA* (1999), 98 Wash.App. 199, 205, 989 P.2d 1172, 1176; see, also, 1 Rice, Attorney-Client Privilege in the United States (2 Ed.1999) 148, Section 4:29 ("If the interests of the insured and insurer become adverse, their joint communicant status ceases"); Developments in the Law – Privileged Communications (1985), 98 Harv.L.Rev. 1450, 1527 (noting that the attorney-client privilege "rests on assumptions of adverseness that underlie the American judicial system").

––––––––––––––––––

*Blue, Wilson & Blue* and *Richard H.H. Troxell*, for appellant.

*Frost & Maddox Co., L.P.A.*, and *Mark S. Maddox*, for appellee.

*Robert P. Rutter*, urging reversal for *amicus curiae*, the Ohio Academy of Trial Lawyers.

––––––––––––––––––