[Cite as *Edy v. Farmers Property Casualty Ins. Co.*, 2024-Ohio-1047.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| MELISSA EDDY, | : | APPEAL NO. C-230298 |
| | | TRIAL NO. A-2202476 |
| and | : | |
| ALEXIS EDDY, | : | |
| Plaintiffs-Appellees, | : | *O P I N I O N.* |
| vs. | : | |
| FARMERS PROPERTY CASUALTY INSURANCE COMPANY, f.k.a. METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, | : | |
| | : | |
| Defendant-Appellant. | : | |


Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 22, 2024

*Rittgers Rittgers & Nakajima, Gus J. Lazares* and *Wesley M. Nakajima*, for Plaintiffs-Appellees,


*Collins Roche Utley & Garner, David W. Orlandini* and *Sunny L. Horacek,* for Defendant-Appellant.

**BOCK, Presiding Judge.**

{¶1}   This appeal requires us to examine whether an insurer's claims file created during the pendency of a lawsuit is discoverable when the insured subsequently alleges that the insurer, in bad faith, delayed the handling, processing, and ultimate payment of a benefits claim.

{¶2}   Defendant-appellant Farmers Property Casualty Insurance Company, formerly known as Metropolitan Property and Casualty Insurance Company ("Farmers"), argues that its claims file is protected by the attorney-client privilege and the work-product doctrine, and that the bad-faith exception does not apply after an insured sues the insurer for coverage. But plaintiffs-appellees Melissa and Alexis Eddy[1] argue that an insurer's allegedly delayed handling, processing, and paying a claim in bad faith—as opposed to the insurer denying a claim in bad faith—renders the claims file discoverable until the date of payment.

{¶3}   We agree with the Eddys and hold that, in cases where insureds allege that their insurer delayed their claim's handling, processing, and payment in bad faith, the insurer's claims file is discoverable up to the date of payment. We further hold that the trial court is not required to inspect a claims file in camera for privileged material where the insurer's assertions of the privilege are conclusory and fail to satisfy the insurer's burden under Civ.R. 26(B)(8).

## I. **Facts and Procedure**

{¶4}   In February 2020, Melissa sat in the passenger seat of a car driven by her husband, Alexis, when Pamela Shooner crashed into the Eddys' vehicle. Melissa suffered neck injuries, ultimately requiring surgery.

---

[1] As the Eddys share a surname, we refer to them individually by their first names.

2

*Negotiations and coverage lawsuit*

**{¶5}** At the time of the crash, the Eddys held an underinsured motorist ("UIM") policy with Farmers, which provided coverage for injuries not covered by the tortfeasor's policy. Shooner's policy covered up to $100,000 for bodily injury and liability. The Eddy's UIM policy limits were $250,000 per person and $500,000 per accident.

**{¶6}** In June 2021, the Eddys informed Farmers that Shooner's insurance company tendered a $100,000 settlement offer, the policy maximum. Roughly one week later, the Eddys demanded $150,000 under their UIM policy. Their demand included medical records, bills, and a narrative from Melissa's surgeon confirming Melissa's "spine surgery was directly related to acute injuries" from the collision. They provided releases, a Medicare questionnaire, and a medical provider list to Farmers.

**{¶7}** In late July 2021, Farmers offered $33,312 to settle the Eddys' UIM claim. The following month, Farmers authorized acceptance of Schooner's insurer's $100,000 settlement offer. Days later, the Eddys responded to the $33,312 offer with a $148,000 demand, which Farmers countered with a $38,000 offer.

**{¶8}** In August 2021, the Eddys sued Farmers, asserting that they were entitled to coverage under the policy, prejudgment interest, and costs.

**{¶9}** In late March 2022, Farmers offered the Eddys a $150,000 settlement, conditioned on their waiver of any bad-faith claims. In April 2022, Farmers offered the Eddys an unconditional $150,000 settlement to resolve their UIM benefits claims. The Eddys accepted the April 2022 offer and dismissed the coverage action the following month.

*Bad-faith lawsuit*

{¶10} In July 2022, the Eddys sued Farmers for its alleged bad-faith negotiation of their UIM claim, seeking compensatory damages, punitive damages, attorney's fees, prejudgment and postjudgment interest, and costs. The Eddys claimed that Farmers "delayed in making any reasonable attempt to resolve" the claim and "failed to promptly, adequately, and reasonably investigate the facts and circumstances of the subject collision." The Eddys alleged that Farmers "recklessly, willfully, knowingly, intentionally, and/or maliciously" breached its duty and delayed the resolution of the UIM claim "in the hopes that Plaintiffs would accept an amount that was unreasonably low considering the nature and severity of Plaintiffs' claims."

{¶11} During discovery, the Eddys moved to compel Farmers's discovery responses. Relevant here, the Eddys requested Farmers's "complete claim file for the underlying claim." Farmers immediately responded and produced portions of its claims file. But the Eddys supplemented their motion, asserting that the response was incomplete. The Eddys explained that Farmers withheld its claims file "from August 27, 2021 – April 4, 2022 (the day that Defendant finally offered to pay policy limits without conditions)" and "provided **no** written responses or objections" regarding the withheld portion of the claims file.

{¶12} Farmers's memorandum in opposition challenged the relevancy of its claims file after August 27, 2021, the day the Eddys filed their coverage complaint. The parties filed responses and replies, disputing the appropriate cutoff dates for discoverability of the claims file. In their final response to Farmers, the Eddys attached a two-page privilege log from Farmers regarding the claims file.

{¶13} The trial court granted the Eddys' motion to compel and ordered Farmers to produce "the entire unredacted claim file up to the benefit-payment date

of 04/11/22, which is the date of the check for underinsured motorist benefits to Plaintiffs." Further, the trial court overruled Farmers's objections, explaining that Farmers "has not provided written objections and responses to Plaintiffs' Requests [for Documents], thus any objections are waived."

## II. Law and Analysis

{¶14} On appeal, Farmers marshals two arguments in a single assignment of error to challenge the trial court's decision. First, it claims that the attorney-client privilege and work-product doctrine protect the portions of its claim file created after the Eddys filed their UIM coverage complaint. Second, Farmers argues that the trial court was required to conduct an in-camera review of its claims file before ordering the production of that file. On both points, we disagree.

### *Discovery, the attorney-client privilege, and the work-product doctrine*

{¶15} Under Civ.R. 26, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Discovery is deliberately broad to facilitate "the free flow of information between the parties," because " '[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.' " *Weckel v. Cole + Russell Architects*, 2013-Ohio-2718, 994 N.E.2d 885, ¶ 24 (1st Dist.), quoting *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Generally, this court "review[s] the trial court's disposition of discovery issues under an abuse-of-discretion standard." *Grace v. Mastruserio*, 182 Ohio App.3d 243, 2007-Ohio-3942, 912 N.E.2d 608, ¶ 13 (1st Dist.).

{¶16} But when the "trial court's discovery order involves an alleged privilege, we review the order de novo." *Loukinas v. State Farm Mut. Auto. Ins. Co.*, 1st Dist. Hamilton No. C-180462, 2019-Ohio-3300, ¶ 21, quoting *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 13. Likewise, we review the

5

trial court's order to produce materials protected by the work-product doctrine de novo. *Shell v. Drew & Ward Co., L.P.A.,* 178 Ohio App.3d 163, 2008-Ohio-4474, 897 N.E.2d 201, ¶ 10 (1st Dist.).

{**¶17**} The attorney-client privilege is " 'one of the oldest recognized privileges for confidential communications,' " and is governed by both R.C. 2317.02(A) and the common law. *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.,* 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 17, quoting *Swidler & Berlin v. United States,* 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998). The privilege protects "confidences shared in the attorney-client relationship" to encourage legal consultation and " 'aid in the administration of justice.' " *Moskovitz v. Mt. Sinai Med. Ctr.,* 69 Ohio St.3d 638, 660-661, 635 N.E.2d 331 (1994), quoting *Lemley v. Kaiser,* 6 Ohio St.3d 258, 264, 452 N.E.2d 1304 (1983). Communications are privileged if " '(1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless  the protection is waived.' " *Grace,* 182 Ohio App.3d 243, 2007-Ohio-3942, 912 N.E.2d 608, at ¶ 19, quoting *Perfection Corp. v. Travelers Cas. & Sur.,* 153 Ohio App.3d 28, 2003-Ohio-3358, 790 N.E.2d 817, ¶ 12 (8th Dist.). But the privilege is not absolute—it "applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice." *Perfection Corp.* at ¶ 26.

{**¶18**} Beyond the attorney-client privilege, "certain aspects of an attorney's efforts on behalf of his client—reflected in 'interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways'—may be protected from disclosure as attorney work

6

product." *State v. Glenn*, 165 Ohio St.3d 432, 2021-Ohio-3369, 179 N.E.3d 1205, ¶ 16, quoting *Hickman*, 329 U.S. at 511, 67 S.Ct. 385, 91 L.Ed. 451. The law disfavors disclosure of work product that " 'tends to reveal the attorney's mental processes.' " *Id.*, quoting *Upjohn Co. v. United States*, 449 U.S. 383, 399, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). In Ohio, the work-product doctrine is governed by Civ.R. 26, which protects "documents, electronically stored information and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent)." Civ.R. 26(B)(4). Yet, material that falls under this protection may be discoverable "upon a showing of good cause thereof." *Id.*

### *Discovery of claims file is not precluded in bad-faith actions*

{¶19}  In Ohio, it is well established that "documents and other things showing the lack of a good faith effort to settle by a party or the attorneys acting on his or her behalf are wholly unworthy of the protections afforded by any claimed privilege." *Moskovitz*, 69 Ohio St.3d at 661, 635 N.E.2d 331; *see Givaudan Flavors*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, at ¶ 30 (identifying exceptions to the attorney-client privilege and explaining that the "privilege does not apply when the client seeks to abuse the attorney-client relationship.").

{¶20}  Insurers like Farmers have a duty to handle and pay an insured's claims in good faith. *See Stewart v. Siciliano*, 2012-Ohio-6123, 985 N.E.2d 226, ¶ 12 (11th Dist.). An insurer's "breach of this duty gives rise to a cause of action in tort against the insurer." *Id.* Bad faith can be found where an insurer's actions are "not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.,* 71 Ohio St.3d 552, 644 N.E.2d 397 (1994), paragraph one of the syllabus. "An insurer lacks reasonable justification for denying a claim when its refusal

to pay is based upon an arbitrary or capricious belief that the insured is not entitled to coverage." *Drouard v. United Servs. Auto. Assn.,* 6th Dist. Lucas No. L-06-1275, 2007-Ohio-1049, ¶ 17. Bad-faith claims include "an insurer's 'footdragging' in handling and evaluating the claim or an unreasonably low settlement offer." *Crane Serv. & Inspections, LLC v. Cincinnati Specialty Underwriters Ins. Co.,* 12th Dist. Butler No. CA2018-01-003, 2018-Ohio-3622, ¶ 24.

{¶21} In *Moskovitz,* the Ohio Supreme Court considered the scope of discovery in an action for prejudgment interest for a lack of a good-faith effort to settle and held that "neither the attorney-client privilege nor the so-called work product exception precludes discovery of the contents of an insurer's claims file." *Moskovitz* at paragraph three of the syllabus. Instead, "[t]he only privileged matters contained in the file are those that go directly to the theory of defense of the underlying case in which the decision or verdict has been rendered." The court explained that materials "showing the lack of a good faith effort to settle by a party or the attorneys acting on his or her behalf are wholly unworthy of the protections afforded by any claimed privilege." *Id.* at 661. The court reasoned that typically "the only way for a party to prove another party's failure to make a good faith effort to settle is by obtaining the claims file of an insurer." *Id.* at 661. Denying access to the claims file in this context would "undermine the entire purpose of a hearing on the issue of prejudgment interest, *i.e.*, to ascertain the truth regarding good faith efforts to settle." *Id.* at 662.

{¶22} The Ohio Supreme Court extended that principle in *Boone v. Vanliner Ins. Co.,* 91 Ohio St.3d 209, 744 N.E.2d 154 (2001), and held, "in an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage." *Id.* at 214. In doing so, the court

reaffirmed the principle that "claims file materials that show an insurer's lack of good faith * * * are unworthy of protection." *Id.* at 213.

{¶23} The *Boone* court distinguished bad-faith coverage-denial claims from bad-faith settlement claims when determining what parts of the claims file remain protected. Because "the lack of a good faith effort to settle involves conduct that may continue throughout the entire claims process," documents "containing attorney-client communications and work product that go directly to the theory of defense in the underlying claim are protected." *Id.* But in coverage-denial cases like *Boone,* "a lack of good faith in determining coverage involves conduct that occurs when assessment of coverage is being considered" and therefore documents related to a bad-faith claim "would have been created prior to the denial of coverage." *Id.*

*The claims file is discoverable up to the date of payment*

{¶24} Farmers equates the Eddys' initiation of their UIM coverage lawsuit to the insurer's denial of coverage in *Boone*, arguing that the Eddys are entitled to the contents of its claims file up to the "constructive denial date," or the day the Eddys filed their UIM coverage complaint. To support its "constructive denial date" theory, Farmers relies on *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, S.D.Ohio No. 2:07-CV-1285, 2012 U.S. Dist. LEXIS 54305, 14 (Apr. 17, 2012). But in *Chubb*, the insurer filed the action for a declaratory judgment in response to a demand for indemnification, a filing that the insurer construed "as its formal denial of indemnity coverage." *Id.* at 14. Here, the Eddys sought to enforce their coverage rights in the underlying UIM lawsuit. We decline to adopt the Eddys' filing of the complaint as a constructive denial of coverage.

{¶25} Farmers directs us to several cases from federal and state courts to argue that an order to produce communications and documents created after litigation

between an insurer and an insured party is improper, and that those materials "cannot even be <u>evidence</u> of bad faith." Farmers devotes a nontrivial portion of its brief to quote the Supreme Court of Montana's analysis of whether an insurer's conduct in an underlying suit is relevant and admissible[2] in a subsequent bad-faith suit. *See Palmer by Diacon v. Farmers Ins. Exchange*, 261 Mont. 91, 123, 861 P.2d 895 (1993). Farmers is correct that the *Palmer* court reasoned that public policy favors "extreme caution in deciding to admit such evidence even if it is relevant to the insurer's initial decision to deny the underlying claim." *Id.* at 123. And it questioned the need to rely on litigation conduct as evidence of an insurer's bad faith. *Id.* But Farmers ignores the *Palmer* court's rejection of a "blanket prohibition" of an insurer's litigation conduct as evidence of bad faith, because "[i]n some instances, however, evidence of the insurer's post-filing conduct may bear on the reasonableness of the insurer's decision and its state of mind when it evaluated and denied the underlying claim." *Id.*

{¶26} The Eddys argue, and we agree, that *Unklesbay v. Fenwick*, 167 Ohio App.3d 408, 2006-Ohio-2630, 855 N.E.2d 516 (2d Dist.), governs the scope of discovery in this case. In *Unklesbay*, Charles Unklesbay sued his insurer for UIM benefits under his policy and included a bad-faith claim "based on Preferred Mutual's alleged refusal to investigate and failure to pay his claim." *Id.* at ¶ 4. Following discovery disputes, the trial court ordered the production of the "claims file materials that were created prior to [Preferred Mutual]'s payment of insurance benefits." *Id.* at ¶ 6. On appeal, the Second District relied on *Boone* to hold that "claims-file materials showing an insurer's lack of good faith in processing, evaluating, or refusing to pay a claim are unworthy of the protection afforded by the attorney-client or work-product

---

[2] We note that information "need not be admissible in evidence to be discoverable." Civ.R. 26(B)(1).

privilege. This is true regardless of whether the insurer ever denied the claim outright." *Id*. at ¶ 16. Addressing the cutoff date for discovery of the claims file, the *Unklesbay* court held that "attorney-client and work-product documents relevant to Unklesbay's bad-faith claim could have been created until the time that Preferred Mutual quit dragging its feet, settled his claim, and paid him benefits." *Id*. at ¶ 26.

{¶27} The circumstances in this case differ from those in bad-faith lawsuits filed after the insurer has denied a claim. When an insurer's claim denial is at issue, any evidence related to the insurer's alleged bad-faith claims processing or denial would have been created before the claim was denied and before the lawsuit was filed. But here, Farmers agreed to pay the limits of the Eddys' policy while the Eddys' coverage lawsuit was pending. And Farmers does not suggest that its duty to process and handle the Eddys's claim in good faith ended when the Eddys filed their UIM complaint. Indeed, it cited a case explaining as much. *See Palmer,* 261 Mont. at 113, 861 P.2d 895 ("Courts have held, and we agree, that an insurer's duty to deal fairly and not to withhold payment of valid claims does not end when an insured files a complaint against the insurer.").

{¶28} It follows that the claims file could include evidence related to the Eddys' allegations of bad faith up to the payment date. We adopt the reasoning of *Unklesbay* and hold that when insureds like the Eddys allege that their insurer unreasonably delayed its handling, processing, and payment of a benefits claim in bad faith, the insureds are entitled to portions of the claims file showing a lack of good faith up to the benefit-payment date.

### *Farmers failed to satisfy its burden under Civ.R. 26(B)(8)(a)*

{¶29} Next, Farmers argues that the trial court failed to require a prima-facie showing of bad faith and failed to conduct an in-camera review of the claims file as

required by R.C. 2317.02(A)(2). Farmers maintains that an in-camera inspection of the claims file is necessary as only materials related to an insurer's bad faith are subject to the bad-faith exception.

{¶30} R.C. 2317.02(A) sets forth exceptions to the attorney-client privilege and provides, in relevant part:

> [I]f the client is an insurance company, the attorney may be compelled to testify, subject to an in camera inspection by a court, about communications made by the client to the attorney or by the attorney to the client that are related to the attorney's aiding or furthering an ongoing or future commission of bad faith by the client, if the party seeking disclosure of the communications has made a prima-facie showing of bad faith, fraud, or criminal misconduct by the client.

The parties dispute the application of R.C. 2317.02(A) to documents containing privileged communications. *Compare Grace,* 182 Ohio App.3d 243, 2007-Ohio-3942, 912 N.E.2d 608, at ¶ 23, *with Jackson v. Greger,* 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, ¶ 7, fn. 1.

{¶31} But resolving this dispute is unnecessary as Farmers failed to satisfy its initial burden when it opposed the Eddys' motion to compel. Under Civ.R. 26(B)(8), a party's withholding information under a claim of privilege must be "supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." Farmers, "the party seeking protection under a privilege, * * * had the burden of demonstrating that a privilege exists." *A Morgan Bldg. Group, LLC v. Owners Ins. Co.*, 2023-Ohio-3133, 224 N.E.3d 150, ¶ 14 (9th Dist.). Without sufficient information, a trial court is unable

to "determine[] whether the information sought is privileged." *State v. E.I. Du Pont de Nemours & Co.*, 4th Dist. Washington No. 20CA30, 2021-Ohio-2614, ¶ 18.

**{¶32}** The withholding party can satisfy this burden with a privilege log or any form that furnishes a sufficiently "detailed account of the material for which privilege is claimed." *N.E. Monarch Constr., Inc. v. Morganti Ent.*, 8th Dist. Cuyahoga No. 109845, 2021-Ohio-2438, ¶ 13. But regardless of form, " '[m]erely stating a "broad and generalized claim of attorney-client privilege" for all responsive communications that are allegedly privileged is insufficient.' " *Drummond v. State Farm Mut. Auto Ins. Co.*, 2023-Ohio-283, 206 N.E.3d 1274, ¶ 25 (10th Dist.), quoting *Total Quality Logistics, LLC v. BBI Logistics LLC,* 12th Dist. Clermont No. CA2021-04-012, 2022-Ohio-1440, ¶ 22, quoting *Cousino v. Mercy St. Vincent Med. Ctr.,* 2018-Ohio-1550, 111 N.E.3d 529, ¶ 44 (6th Dist.). Rather, " 'there must be some factual basis to support the privilege claim, such as "stat[ing] that communications were made between attorney and client for the purpose of procuring legal advice or representation." ' " *Id.,* quoting *Total Quality Logistics* at ¶ 22, quoting *Cargotec, Inc. v. Westchester Fire Ins. Co.,* 155 Ohio App.3d 653, 2003-Ohio-7257, 802 N.E.2d 732, ¶ 13 (6th Dist.).

**{¶33}** Farmers failed to respond to the Eddys' initial motion to compel discovery of the claim file. Farmers responded to the Eddys' supplemental filing and opposed the production of documents with a generalized claim that producing the documents generated during the UIM coverage lawsuit "would involve production of Farmers communications with counsel after litigation was initiated and its work-product in defending the lawsuit filed by Plaintiffs." Farmers supplemented that filing with another broad assertion that "Ohio Law provides that Farmers' claim file past that point is protected by the work product and attorney client privileges." With each

filing, Farmers failed to support its assertion of privilege with a privilege log or other information demonstrating grounds for its assertion.

**{¶34}** The record does include a privilege log from Farmers, which was attached to the Eddys' filing in support of their argument that the log was deficient. The log identifies 20 documents created after the start of the UIM litigation, five of which were withheld due to a claim of "work product privilege and attorney client privilege." Those five documents consist of (1) "Legal fee invoices from Roetzel & Andress" authored by "Roetzel & Andress," (2) "Claim file Log Notes created on 8/27/21 and after" authored by "Various," (3) "Manual Injury Evaluation" authored by "X," and (4-5) two letters to Bradley Snyder authored by Vivian Hairston.

**{¶35}** But there is no indication that the invoices are itemized or contain a narrative, and " 'a simple invoice ordinarily is not privileged.' " *State ex rel. Dawson v. Bloom-Carroll Local School Dist.,* 131 Ohio St.3d 10, 2011-Ohio-6009, 959 N.E.2d 524, ¶ 28, quoting *Hewes v. Langston*, 853 So.2d 1237, ¶ 45 (Miss.2003). And Farmers provided no information about the other four documents that created a factual basis to support its claimed privilege, that these communications related to legal advice. The log merely states, in a conclusory manner, that the documents are privileged. This is insufficient to satisfy Farmers's burden under Civ.R. 26(B)(8).

**{¶36}** In sum, we hold that the trial court appropriately ordered the production of Farmers's claims file up to the benefits-payment date. In doing so, we adopt the reasoning of *Unklesbay*. Furthermore, Farmers failed to satisfy its burden under Civ.R. 26(B)(8) when it withheld information under a claim of privilege.

### III. Conclusion

**{¶37}** We overrule the sole assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**ZAYAS** and **KINSLEY, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.