[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Eddy v. Farmers Property Cas. Ins. Co.*, Slip Opinion No. 2026-Ohio-626.]


NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.


SLIP OPINION NO. 2026-OHIO-626

EDDY ET AL., APPELLEES, *v.* FARMERS PROPERTY CASUALTY INSURANCE COMPANY, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Eddy v. Farmers Property Cas. Ins. Co.*, Slip Opinion No. 2026-Ohio-626.]**

*Attorney-client privilege—Work-product doctrine—Court orders granting motions to compel insurance companies to produce claims files protected by attorney-client privilege based on allegations of bad faith, fraud, or criminal misconduct must comply with R.C. 2317.02(A)(2)—Civ.R. 26(B)(4) presumptively protects work product, which may be disclosed only upon a showing of good cause—Judgment reversed and cause remanded to trial court to comply with R.C. 2317.02(A)(2) and Civ.R. 26(B)(4).*

(No. 2024-0623—Submitted June 4, 2025—Decided February 26, 2026.)

APPEAL from the Court of Appeals for Hamilton County,

No. C-230298, 2024-Ohio-1047.

_____

DEWINE, J., authored the opinion of the court, which KENNEDY, C.J., and DETERS, HAWKINS, and SHANAHAN, JJ., joined. FISCHER and BRUNNER, JJ., dissented and would dismiss the appeal as having been improvidently accepted.

**DEWINE, J.**

{¶ 1} A trial court ordered an insurance company to produce claims-file documents that the company contends are protected by the attorney-client privilege and work-product doctrine. The First District Court of Appeals upheld the trial court's order, reasoning that the documents were subject to discovery because the insureds had alleged that the company acted in bad faith by dragging its feet before settling their claim. 2024-Ohio-1047, ¶ 3 (1st Dist.). In ordering production of the documents, the appeals court relied on a 2001 decision of this court, *Boone v. Vanliner Ins. Co.*, 2001-Ohio-27, which created an exception to the attorney-client privilege in an insurer-bad-faith case for materials created prior to an insurance company's denial of coverage. *Id.*

{¶ 2} The insurance company presents two objections. First, it says that this case is different from *Boone*, and that the court of appeals erred in extending that decision. Notably, here, the contested documents were created while the insurance company was engaged in litigation with its insureds, while *Boone* dealt with documents created before litigation had commenced. Second, the insurance company argues that the *Boone* decision has been superseded by a statutory enactment, R.C. 2317.02(A)(2), which requires that before ordering production of attorney-client documents, a trial court must determine that the insured has made a prima facie showing of bad faith and conduct an in camera review to determine if the requested materials are related to bad-faith misconduct.

{¶ 3} We agree that the *Boone* decision has been superseded by statute. The disclosure of confidential attorney-client communications in an insurer-bad-faith case is controlled by R.C. 2317.02(A)(2). Attorney-client communications are

2

subject to discovery only upon a prima facie showing of bad faith, and only to the extent that the court, upon an in camera inspection, determines that the communications "are related to the attorney's aiding or furthering an ongoing or future commission of bad faith by the client." R.C. 2317.02(A)(2).

{¶ 4} The disclosure of work-product is governed by Civil Rule 26(B)(4), which presumptively protects from discovery materials "prepared in anticipation of litigation" and allows for disclosure "only upon a showing of good cause therefor."

{¶ 5} Applying these principles, we reverse the judgment of the court of appeals and remand the matter to the trial court to conduct an in camera review to determine if the documents at issue are protected by the attorney-client privilege or work-product doctrine.

## I. BACKGROUND

### A. A Car Accident and Two Lawsuits

{¶ 6} In 2020, Melissa and Alexis Eddy were involved in a car accident. The Eddys were not at fault, and the other driver's insurer ultimately paid the Eddys $100,000, the policy limit of that driver's liability-insurance policy. Because the Eddys did not believe that this payment fully compensated them for their injuries, they turned for additional recovery to their own underinsured motorist ("UIM") policy—a policy that was issued by Farmers Property Casualty Insurance Company ("Farmers").

{¶ 7} The Eddys' UIM policy had a limit of $250,000, and the Eddys sought to recover $150,000—the difference between the $100,000 payment they had already received and their Farmers UIM policy limit. Farmers countered with an offer of $33,312. After negotiations stalled, the Eddys sued Farmers for breach of contract in August 2021. This lawsuit ("the coverage lawsuit") did not assert a claim for bad faith on the part of Farmers.

{¶ 8} Ultimately, Farmers agreed to pay the Eddys the $150,000 they demanded. According to Farmers, it agreed to the settlement as the result of being

presented with new medical information showing the extent of Melissa Eddy's injuries. Farmers issued a check to the Eddys for $150,000 on April 11, 2022, and the coverage lawsuit was dismissed in May 2022.

{¶ 9} A couple of months later, the Eddys filed a new lawsuit against Farmers, alleging bad-faith misconduct in the handling of their claim. They asserted that Farmers "delayed the resolution of [their] claim in bad faith," causing them to "face[] long term uncertainty as to their financial future [and] emotional and mental pain and distress." They also sought punitive damages, claiming that Farmers "acted recklessly, maliciously, knowingly, and/or intentionally."

### B. The Discovery Dispute

{¶ 10} During discovery in the bad-faith action, the Eddys sought to obtain Farmers' entire claims file regarding their UIM claim. Farmers produced most of its claims file but refused to produce documents created from August 27, 2021 (the date on which the Eddys filed their coverage lawsuit) through April 11, 2022 (the date Farmers issued its check resolving the UIM claim). The issue was litigated after a motion to compel discovery was filed by the Eddys. The Eddys argued that they were entitled to the complete claims file. Farmers maintained that producing the contested documents "would involve production of Farmers communications with counsel after litigation was initiated and its work-product in defending the lawsuit filed by Plaintiffs." While the motion to compel was pending, Farmers provided the Eddys with a privilege log. The log identified 20 withheld documents and briefly described each document and the privilege claimed.

{¶ 11} The trial court held a hearing on the motion to compel. At the hearing, Farmers argued that it had no obligation to produce documents that were placed in the claims file after the Eddys filed their coverage lawsuit. It also argued that before the court could order production of claims-file materials, the court was required to conduct an in camera review of the documents.

4

{¶ 12} The trial court issued an order granting the motion to compel. Relevant to the claims file, the order provided that Farmers must "produce the entire unredacted claim file up to the benefit-payment date of 04/11/22, which is the date of the check for underinsured benefits to Plaintiffs." Hamilton C.P. No. A2202476, 1 (May 2, 2023). Although the court had indicated at the hearing that it believed an in camera review of the claims-file materials was required, the court did not order an in camera inspection. *See id.*

### C. The First District Affirms the Trial Court's Order

{¶ 13} Farmers appealed to the First District, arguing that the trial court erred by ordering production of the entire claims file for dates after the Eddys filed their coverage lawsuit. In its view, once litigation commenced, claims-file materials were shielded from discovery. In the alternative, it argued that even if claims-file materials produced after the coverage litigation began could be subject to discovery, the trial court erred by failing to comply with the requirements of R.C. 2317.02(A)(2).

{¶ 14} The First District held that claims-file materials was discoverable up until the date that benefits were paid, reasoning that the Eddys' assertion that Farmers delayed payment in bad faith was a sufficient basis to remove the protections of the attorney-client privilege and work-product doctrine. 2024-Ohio-1047 at ¶ 31 (1st Dist.). The court declined to reach Farmers' argument that the trial court erred by not complying with R.C. 2317.02(A)'s requirement of a prima facie showing of bad faith and an in camera inspection before ordering the release of claims-file materials. *Id.* at ¶ 31. Instead, it rejected Farmers' argument based on an issue that neither party had raised in its briefing in that court. *Id.* It held that Farmers had failed to assert its claims of privilege in sufficient detail to meet its burden under Civ.R. 26(B)(8). *Id.* at ¶ 29-35. That rule requires that "[w]hen information subject to discovery is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made

expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." Civ.R. 26(B)(8)(a). The court reasoned that because Farmers did not meet this initial burden, neither a prima facie showing of bad faith nor an in camera review was required. 2024-Ohio-1047 at ¶ 31, 35-36 (1st Dist.).

## II. LEGAL FRAMEWORK

{¶ 15} This case involves both the attorney-client privilege and the work-product doctrine. It requires us to apply those doctrines as well as decide the continued viability of this court's decision in *Boone*. So we begin our analysis by explaining the legal principles that undergird this dispute.

### A. The Attorney-Client Privilege

{¶ 16} The law has long recognized that communications between an attorney and client for the purpose of obtaining legal advice are subject to privilege and may not be disclosed without the consent of the client. *See Spitzer v. Stillings*, 109 Ohio St. 297, 302 (1924). The attorney-client privilege encourages "'full and frank communication'" between attorneys and clients because "sound legal advice . . . depends on the lawyer's being fully informed by the client." *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 2005-Ohio-1508, ¶ 20, quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege has ancient roots; it "can be traced back at least as far as the reign of Elizabeth I, where the privilege was already well established." *Moskovitz v. Mt. Sinai Med. Ctr.*, 1994-Ohio-324, ¶ 79.

{¶ 17} Ohio codified the privilege in 1853 as part of its first Code of Procedure. *See Spitzer* at 304. Soon thereafter, this court acknowledged the General Assembly's authority to modify the common-law privilege through statutory enactment. *King v. Barrett*, 11 Ohio St. 261, 263-264 (1860). Today the privilege is codified in R.C. 2317.02(A).

{¶ 18} Despite the statutory enactment, we have held that common-law principles may be relevant in applying the privilege to areas in which the legislature

6

has not legislated. *See, e.g.*, *Leslie* at ¶ 18 ("In Ohio, the attorney-client privilege is governed by statute, R.C. 2317.02(A), and in cases that are not addressed in R.C.2317.02(A), by common law."). Evid.R. 501 provides, "The privilege of a . . . person . . . shall be governed by statute enacted by the General Assembly or by principles of common law as interpreted by the courts of this state in the light of reason and experience." Thus, we have generally understood that when the legislature prescribes specific rules for application of the privilege, those rules control. *See Spitzer* at 302 (attorney-client privilege is "clearly a matter of policy, and within the power of legislators to change, or even abrogate entirely"). But where the legislature has not weighed in, common-law principles determine the contours of the privilege. *See State ex rel. Hunt v. Fronizer*, 77 Ohio St.7, 16 (1907) ("the General Assembly will not be presumed to have intended to abrogate a settled rule of the common law unless the language used in a statute clearly imports such intention"); *Mandelbaum v. Mandelbaum*, 2009-Ohio-1222, ¶ 29 ("the *absence* of language [that would codify the common law] does not demonstrate that the General Assembly intended to abrogate what had become well-established law" [emphasis added]).

### 1. Ohio's Judicially-Created Exception to the Attorney-Client Privilege

{¶ 19} At issue in this case is a judicially created exception to the attorney-client privilege for materials relating to bad-faith conduct by an insurance company in denying a claim. To understand the exception, one needs to begin with *Moskovitz*, 1994-Ohio-324. That case addressed R.C. 1343.03(C), which allows a prevailing plaintiff in a tort case to recover prejudgment interest upon a showing that the plaintiff had made a good-faith effort to settle the case and the defendant had not. *Id.* at 657. Under the statute, the prejudgment-interest proceeding occurs posttrial: a motion for prejudgment interest may be filed only after the entry of judgment on the underlying tort claim. *Id*. at ¶ 65.

**{¶ 20}** The *Moskovitz* court observed that determining whether a defendant made a good-faith effort to settle requires a review of the settlement efforts of the defendant's insurance carrier and that evidence about such efforts would often be found in the insurer's claims file. *Id.* at ¶ 72. Although the claims file might contain attorney-client communications, the *Moskovitz* court noted that the privilege was not absolute and that, historically, the privilege did not protect advice related to fraudulent conduct. *Id.* at ¶ 79. Equating the historical crime-fraud exception to the lack of a good-faith effort to settle, the court concluded that "[d]ocuments and other things showing the lack of a good faith effort to settle by a party or the attorneys acting on his or her behalf are wholly unworthy of the protections afforded by any claimed privilege." *Id.* at ¶ 80. Thus, the court held that "only privileged matters contained in the [claims] file . . . that go directly to the theory of defense of the underlying case" are entitled to protection. *Id.* at ¶ 84. The court ordered the trial court to conduct an in camera review of the claims file to determine which items were entitled to protection. *Id.* at ¶ 85.

**{¶ 21}** The *Moskovitz* decision effected an expansive remaking of the law on privilege. The court based its holding neither on an established common-law exception to the privilege nor on the privilege statute. Rather, the court seemed to presume that its common-law authority granted it the power to craft new doctrine. *But see Rogers v. Tennessee*, 532 U.S. 451, 471-478 (Scalia, J., dissenting) (explaining that at common law, judging was traditionally understood not as the power to change the law or to make the law but to look to prior judicial opinions as evidence of a custom that formed part of the common law). *Moskovitz* was also surprising in that it premised its decision on the notion that "things *showing* the lack of a good faith effort to settle by a party or the attorneys acting on his or her behalf are wholly unworthy of the protections afforded by any claimed privilege," but seemed to hold that a mere *allegation* of bad faith was sufficient to displace attorney client and work-product protections. (Emphasis added). *Moskovitz* at 661.

{¶ 22} *Moskovitz* dealt with a postjudgment proceeding for prejudgment interest under a specific statutory provision, R.C. 1343.03(C). But in *Boone*, this court extended *Moskovitz* even further. The *Boone* court concluded that the same policy rationale that it had found persuasive for prejudgment-interest claims in *Moskovitz* applied generally to claims asserting that an insurance company failed to settle a claim in bad faith—that is, that "claims file materials that show an insurer's lack of good faith in denying coverage are unworthy of protection." *Boone*, 2001-Ohio-27, at ¶ 18. The court expressly limited its holding to "claims file materials . . . that were created prior to the denial of coverage," on the basis that such files would not contain work-product materials, because at that point "it ha[d] not yet been determined whether coverage exists." *Id.* at ¶ 19. After announcing its new rule, the court proceeded to review each challenged item to determine which of the documents should be disclosed. *Id*. at ¶ 20-24. It ordered some documents disclosed, but protected from discovery documents that "contain[ed] attorney-client communications and/or work product that were created after coverage was denied." *Id*. at ¶ 25.

{¶ 23} Justice Cook, joined by Justices Moyer and Stratton, dissented. *Id*. at ¶ 27. She explained that the majority's new exception to the attorney-client privilege could not be justified as an application of the common-law crime-fraud exception to the privilege. *Id.* at ¶ 30 (Cook, J., dissenting). She pointed out that an insurer's lack of reasonable justification for denying a claim did not equate to fraud, which requires a false statement with an intent to mislead. *Id.* at ¶ 31 (Cook, J., dissenting). Justice Cook also warned that the "majority's holding [was] startling for its practical effect," allowing a *mere allegation* of privilege to upset the traditional protections afforded to attorney-client communications. *Id.* at ¶ 32 (Cook, J., dissenting). The majority's new rule, she worried, would undermine the honest communication between an attorney and client that the privilege was designed to protect because "[a]n insurance company that seeks legal advice from

an attorney about a coverage issue will now have to consider the possibility that those communications will be subject to future disclosure in the event that coverage is denied and the insured commences a bad-faith lawsuit." *Id*. at ¶ 34 (Cook, J., dissenting). A respected insurance treatise was even more pointed in its criticism: *Boone* "is contrary to settled law throughout the country, and other jurisdictions ought not to follow it." 2 *New Appleman Insurance Bad Faith Litigation*, § 16.04[4][a][1][B][iii]; *see also* Richmond, *Appleman: Current Critical Issues in Insurance Law*, IV(C) (Aug. 2011) (Boone is "astonishingly wrong" for, among other reasons, "abrogat[ing] the widely accepted and long-held view that an insured cannot pierce an insurer's attorney-client privilege and work product immunity simply by alleging bad faith").

### 2. R.C. 2317.02

{¶ 24} Following the *Boone* decision, the General Assembly in 2007 modified the privilege statute to deal explicitly with claims of insurer bad faith. Today the statute provides that an attorney

> shall not testify . . . concerning a communication made to the attorney by a client in that relationship or the attorney's advice to a client, *except that if the client is an insurance company*, the attorney may be compelled to testify, subject to an in camera inspection by a court, about communications made by the client to the attorney or by the attorney to the client that are related to the attorney's aiding or furthering an ongoing or future commission of bad faith by the client, if the party seeking disclosure of the communications has made a prima-facie showing of bad faith, fraud, or criminal misconduct by the client.

(Emphasis added.) R.C. 2317.02(A)(2).

{¶ 25} At the same time, the General Assembly enacted uncodified language making clear that the provision was intended to modify this court's caselaw:

> SECTION 6. The General Assembly declares that the attorney-client privilege is a substantial right and that it is the public policy of Ohio that all communications between an attorney and a client in that relation are worthy of the protection of privilege. . . .  The common law established in *Boone v. Vanliner Ins. Co.* [2001-Ohio-27], *Moskovitz* [1994-Ohio-324], *and Peyko v. Frederick* (1986), 25 Ohio St.3d 164, is modified accordingly to provide for judicial review regarding the privilege.

2006 Am.Sub.S.B. No. 117 (effective Oct. 31, 2007).

### 3.  R.C. 2317.02(A)(2) Applies to this Dispute

{¶ 26} Farmers argues both that the court of appeals went too far in extending *Boone* and that the trial court should have followed the requirements of R.C. 2317.02(A)(2).  So we turn to the threshold question: Does R.C. 2317.02(A) apply to this dispute?

{¶ 27} The Eddys argue that R.C. 2317.02 only applies to "attorney testimony . . . sought in discovery or at trial" and not to documentary evidence. Farmers argues that the statute encompasses not only attorney testimony, but also documents containing attorney-client communications.  Both sides can muster some authority for their view.  *Compare Grace v. Mastruserio*, 2007-Ohio-3942, ¶17 (1st Dist.) ("A plain reading of the statute clearly limits the statute's application to cases in which a party is seeking to compel testimony of an attorney for trial or at a deposition") *with Martin v. Martin*, 2012-Ohio-4889, ¶ 26 (11th Dist.) ("The

statutory privilege, which is testimonial in nature, protects the sought-after communications both at trial and during the discovery process.").

{¶ 28} Our caselaw supports the view that R.C. 2317.02(A) applies to documentary evidence. We have long held that a statutory provision that prevents an attorney from testifying about attorney-client communications also precludes attempts to obtain documents that reveal those communications. *See In re Klemann*, 132 Ohio St. 187 (1936). In *Klemann,* a party sought to subpoena a casualty report that an insurer had transmitted to his counsel for purposes of preparing a defense. At the time, Ohio's attorney-client privilege was codified in Section 11494 of the General Code and provided that an attorney "'shall not testify . . . concerning a communication made to him by his client in that relation, or his advice to his client.'" *Klemann* at 191, quoting former G.C. 11494. We held that the report "constitute[d] a communication from client to attorney and is privileged against production and disclosure under Section 11494, General Code." *Id*. at syllabus.

{¶ 29} We have adhered to this understanding in subsequent years. In *Jackson v. Greger*, we explained,

> R.C. 2317.02(A) provides a testimonial privilege—i.e., it prevents an attorney from testifying concerning communications made to the attorney by a client or the attorney's advice to a client. A testimonial privilege applies not only to prohibit testimony at trial, but also to protect the sought-after communications during the discovery process. The purpose of discovery is to acquire information for trial. Because a litigant's ultimate goal in the discovery process is to elicit pertinent information that might be used as testimony at trial, the discovery of attorney-client communications necessarily jeopardizes the testimonial privilege.

12

> Such privileges would be of little import were they not applicable during the discovery process.

2006-Ohio-4968, ¶ 7, fn. 1. *See also Burnham v. Cleveland Clinic*, 2016-Ohio-8000, ¶17 ("the testimonial privilege is governed by R.C. 2317.02 . . . and unless a waiver or other exception causes the privilege to not apply, it offers full protection from discovery"); *State v. Smorgala*, 50 Ohio St.3d 222, 225 (1990) (holding that drunk-driving defendant's medical records were protected by physician-patient privilege under R.C. 2317.02 and "there is no vacuum within which we can proceed by common-law pronouncement"); *State ex. rel. Lambdin v. Brenton*, 21 Ohio St.2d 21, 23 (1970) (holding that personal-injury plaintiff's medical records were privileged under R.C. 2317.02 and court would not impose any common-law exception otherwise).

{¶ 30} The current language of R.C. 2317.02(A)(2) confirms our long-held understanding that the statutory privilege applies both to documentary evidence and trial and deposition testimony. R.C. 2317.02(A)(2) requires an in camera inspection before attorney-client communications related to an insurance company's bad faith may be disclosed. The term "in camera inspection" ordinarily refers to a trial judge's review of documentary evidence, not to a consideration of a proffer of expected testimony. *See Black's Law Dictionary* (12th Ed. 2024) (defining "in camera inspection" as "a trial judge's private consideration of evidence"); *Stull v. Summa Health Sys.*, 2024-Ohio-5718, ¶ 33 (ordering in camera inspection to determine whether residency file is protected by privilege). This understanding is buttressed by the uncodified language that references "*all communications* between an attorney and a client" and that explicitly expresses an intent to supersede this Court's decisions in *Boone* and *Moskovitz*. (Emphasis added.) 2006 Am.Sub.S.B. No. 117 (effective Oct. 31, 2007).

{¶ 31} Having concluded that R.C. 2317(A)(2) applies to discovery materials, it follows that the amended statute supersedes *Boone* when it comes to application of the attorney-client privilege. In reaching its decision, the *Boone* court apparently relied on its authority to identify principles of common law when the legislature has been silent on aspects of the privilege. *See* Evid.R. 501. But we have long recognized that common-law-privilege principles must give way to statutory enactments. *See King*, 11 Ohio St. 261; *Spitzer*, 109 Ohio. St. 297. This court's pronouncements about the common law of privilege are "within the power of legislators to change, or even abrogate entirely." *Id.* at 302.

{¶ 32} R.C. 2317.02(A)(2) sets forth the circumstances under which an insurance company's communications with its attorney are subject to disclosure (when there has been a prima facie showing of bad faith) and the conditions upon which such disclosure shall be made (after an in camera inspection). Because the statute provides a comprehensive framework for resolving privilege issues in the context of insurer-bad-faith claims, it has completely abrogated our decision in *Boone* as it applies to the attorney-client privilege.

### B. The Work-Product Doctrine

{¶ 33} The work-product doctrine is of more recent vintage than the attorney-client privilege, having been recognized by the United States Supreme Court in 1947 in *Hickman v. Taylor,* 329 U.S. 495, 510 (1947). *See Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp*, 2010-Ohio-4469, ¶ 54 ("The work-product doctrine emanates from *Hickman* . . . ."). The doctrine provides a qualified privilege, generally protecting from disclosure the "files and mental processes of lawyers" made in anticipation of litigation. *Hickman* at 514. Its purpose is "(1) to preserve the right of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (2) to prevent

an attorney from taking undue advantage of his adversary's industry or efforts." Civ.R. 26(A).

{¶ 34} As it applies to tangible materials, the work-product doctrine is set forth in Civ.R. 26(B)(4), which provides, "[A] party may obtain discovery of documents, electronically stored information and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing of good cause therefor." The rule "places a burden on the party seeking discovery to demonstrate good cause for the sought-after materials. *Jackson*, 2006-Ohio-4968, at ¶ 16. The good-cause requirement is met only when the work product "is directly at issue in the case, the need for the information is compelling, and the evidence cannot be obtained elsewhere." *Squire, Sanders & Dempsey, L.L.P.*, at paragraph two of the syllabus.

{¶ 35} Although the current version of R.C. 2317.02(A)(2) abrogates *Boone* and *Moskovitz* as they apply to the attorney-client privilege, that statutory provision only deals with attorney-client privilege, not the work-product doctrine. The Eddys maintain that this court's holdings in *Boone* and *Moskovitz* require the disclosure of work-product materials when it is alleged that an insurer has engaged in a bad-faith failure to settle. But neither case stands for that broad proposition.

{¶ 36} The holding in *Moskovitz* does suggest that work-product materials that do not go directly to an attorney's theory of the case are subject to disclosure, but *Moskovitz* was specifically limited to postjudgment proceedings for prejudgment interest in claims brought under R.C. 1343.03(C) for failure to make a good-faith effort to settle a tort claim, *Moskovitz*, 1994-Ohio-324, at paragraph three of the syllabus. Because it involved a postjudgment proceeding, the usual concern that the disclosure of work product would impede a party's ability to fully investigate and present its case, see *Hickman*, at 510-511, applied with less force.

15

**{¶ 37}** *Boone* did not import *Moskovitz*'s holding about the work-product doctrine to insurer-bad-faith claims generally. As the syllabus language in *Boone* makes clear, the holding of that case was limited to the attorney-client privilege. *Boone*, 2001-Ohio-27, at syllabus ("In an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage."). Indeed, the court in *Boone* specifically declined to allow the discovery of materials that it considered attorney work product. *Id.* It confined its holding to materials created before the denial of coverage because at "that stage of the claims handling, the claims file materials will not contain work product, *i.e.*, things prepared in anticipation of litigation, because at that point it has not yet been determined whether coverage exists." *Id.* at ¶ 19; *see also id.* at syllabus.[1] Thus, upon its review of the documents, the *Boone* court refused to order disclosure of "documents contain[ing] attorney-client communications and/or work product that were created after coverage was denied." *Id.* at ¶ 25.

**{¶ 38}** We decline to read *Moskovitz* or *Boone* broadly to create some special exemption from the work-product doctrine for claims-file information in insurer-bad-faith claims. The work-product doctrine applies to the claims-file information in this case in the same manner as it applies to other materials: such materials may be disclosed "only upon a showing of good cause therefor," Civ.R. 26(B)(4).

---

1. We disagree with *Boone*'s assumption that work-product materials could not be created before the denial of a claim. Presumably, an insured could threaten litigation, and an attorney could create work product before an insurance company had made a final determination to deny a claim. See Richmond, *Appleman: Current Critical Issues in Insurance Law*, at IV(C) (Aug. 2011) (opining that *Boone* represents an "incredibly misguided view, principally because it wrongly assumes that an insured cannot threaten litigation before a claim is denied"). Nevertheless, what is important to our analysis here is the *Boone* court's determination that materials it considered work product (those created after the denial of coverage) were not subject to discovery.

16

### III.  RESOLVING THIS DISPUTE

{¶ 39} Having clarified the applicable legal principles, we now turn to the dispute in front of us.  Farmers advances two propositions of law.  First, it argues that *Boone* does not apply to privileged materials created during litigation between the insurer and the insured.  Second, it argues that if *Boone* does apply to materials created during litigation, trial courts are required to conduct an in camera inspection to determine the scope of the exception to the privileges set forth in *Boone.*

{¶ 40} Our determination that R.C. 2317.02(A)(2) has abrogated *Boone* makes resolution of these propositions straightforward.  Questions of attorney-client privilege are to be resolved under R.C. 2317.02(A)(2): privileged documents may only be disclosed upon a prima facie showing of bad faith, and then only if they "are related to the attorney's aiding or furthering an ongoing or future commission of bad faith by the client" as determined through an in camera inspection.  Questions about work-product doctrine are controlled by Civ.R. 26(B)(4): such materials may only be disclosed upon a "showing of good cause."

### A.  The Court of Appeals Erred in Concluding That Farmers Forfeited Its Claims of Privilege

{¶ 41} The court of appeals concluded that an in camera inspection was not required because Farmers' assertions of privilege were conclusory and failed to satisfy its initial burden under Civ.R. 26(B)(8).  2024-Ohio-1047 at ¶ 35 (1st Dist.).  There are several problems with this determination.  First, the Eddys had not argued in the appellate court that Farmers failed to sufficiently raise its claim of privilege.  It is axiomatic that "our judicial system relies on the principle of party presentation, and courts should ordinarily decide cases based on issues raised by the parties." *Epcon Communities Franchising, L.L.C. v. Wilcox Dev. Group, L.L.C.*, 2024-Ohio-4989, ¶ 15, citing *Greenlaw v. United States*, 554 U.S. 237, 243 (2008).  "Under this principle, 'we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'"  *Id.*, quoting

*Greenlaw* at 237. Judges "'call balls and strikes'; they don't get a turn at that bat." *Clark v. Sweeney*, 607 U.S. ___, ___, 2025 WL 3260170, *1 (2025), quoting *Lomax v. Ortiz-Marquez*, 590 U.S. ___, ___, 140 S.Ct. 1721, 1724 (2020). The court of appeals erred by refusing to apply R.C. 2317.02(A)(2) and Civ.R. 26(B)(4) based on a claim that the Eddys had not asserted in that court and to which Farmers did not have an opportunity to respond.

{¶ 42} Nor do we understand the premise of the court of appeals' decision. In the trial court, Farmers repeatedly argued that claims-file materials created after the Eddys filed their coverage lawsuit were protected by the attorney-client privilege and the work-product doctrine. Farmers also provided to the Eddys a privilege log detailing the documents that it was withholding and the basis for its claimed entitlement to protection. And it requested an in camera inspection both in its briefing in the trial court and at the hearing on the Eddys' motion to compel.

{¶ 43} A party need only assert a claim of privilege through a description of documents "sufficient to enable the demanding party to contest the claim." Civ.R. 26(B)(8)(a). The Eddys sought discovery of Farmers' entire claims file up to the benefit-payment date, arguing that *Boone* provided a broad-based exception to the attorney-client privilege and work-product doctrine that made everything in the file subject to discovery. Farmers resisted this broad claim, arguing that materials created after the benefit-payment date were not subject to discovery, and in any event, the trial court was required to comply with R.C. 2317.02(A). Farmers provided sufficient information for the Eddys to contest its claim of privilege—a conclusion that is evidenced by the fact that the Eddys vigorously contested Farmers' claim of privilege in the courts below.

{¶ 44} In a recent case that did not involve R.C. 2317.02(A), we held that "[w]hen a privilege issue is complicated or unclear," a court should take steps, including, "but not limited to an in camera review" to resolve the claim of privilege, *Stull*, 2024-Ohio-5718, at ¶ 31. In this case, an in camera review was not only

necessary as a matter of sound judicial administration, it was also required by R.C. 2317.02(A)(2). The court of appeals erred by concluding that Farmers forfeited its right to the in camera inspection by failing to raise its claim of privilege with sufficient specificity.

## B. The Court of Appeals Erred in Concluding That Farmers' Entire Claims File Up until the Date of Payment Was Subject to Discovery

{¶ 45} The court of appeals also erred in its conclusion that Farmers' entire claims file up to the date of the payment of the Eddys' coverage claim was subject to disclosure. 2024-Ohio-1047 at ¶ 3 (1st Dist.). As we have explained, under R.C. 2317.02(A)(2) only attorney-client communications that "are related to the attorney's aiding or furthering an ongoing or future commission of bad faith by the client" fall outside the privilege. And a court may order such documents produced only following a determination that the requesting party has made a prima facie showing of bad faith and after an in camera inspection. *Id*. Thus, the court of appeals should not have concluded that as a matter of law the attorney-client privilege did not protect Farmers' claims-file materials before the payment date. Instead, it should have remanded the matter to the trial court to conduct the appropriate inquiry under R.C. 2317.02(A)(2) as to the attorney-client privilege.

{¶ 46} Further, the work-product doctrine protects information in the claims file that was "prepared in anticipation of litigation," Civ.R. 26(B)(4). Although R.C. 2317.02(A)(2) does not mandate an in camera inspection for work-product materials, the exigencies of this case dictate that an in camera inspection is necessary. Because the claims-file materials were prepared after the Eddys initiated their coverage litigation, there is a strong likelihood that such items were prepared in anticipation of litigation and are thus presumptively subject to the work-product doctrine. Further, we are hard pressed to see how in a case like this one, a court could comply with Rule 26(B)(4)'s good-cause requirement without conducting an in camera review. *See, e.g.*, *Estate of Hohler v. Hohler*, 2009-Ohio-7013, ¶ 3 (7th

Dist.) (in camera review was necessary to determine if good-cause exception applied); *Sherwin-Williams v. Motley Rice, L.L.C.*, 2012-Ohio-809, ¶ 56 (8th Dist.) (abuse of discretion to order disclosure of work-product materials without in camera inspection to determine if good-cause exception applies). The trial court should have conducted an in camera inspection to determine if the materials fell under the work-product doctrine. To the extent that the work-product doctrine applied, disclosure should have only been ordered upon a showing of "good cause," Civ.R. 26(B)(4). The court of appeals erred in upholding the trial court's decision to order production of Farmers' entire claims file up to the date of settlement of the Eddys' coverage lawsuit.

**C. We Remand This Matter to the Trial Court to Conduct the Appropriate Inquiries under R.C. 2317.02(A) and Civ.R. 26(B)(4)**

{¶ 47} We remand this matter to the trial court to comply with R.C. 2317.02(A)(2) and Civ.R. 26(B)(4). Pursuant to those requirements, the court should proceed in the following manner on remand:

1. Determine whether the Eddys have made a prima facie showing "of bad faith, fraud, or criminal misconduct," R.C. 2317.02(A)(2).

2. Conduct an in camera review of the disputed portions of Farmers' claims file—those materials created between August 27, 2021, the date on which the Eddys filed their coverage lawsuit, and April 11, 2022, the date on which Farmers paid the Eddys $150,000 to settle the coverage lawsuit. In this review, the court should identify documents that would ordinarily be protected by the attorney-client privilege—that is, documents that evidence "a communication made to the attorney by a client in that relationship or the attorney's advice to a client," R.C. 2317.02(A)(2). The court should also identify documents that fall under the work-product doctrine—those "prepared in anticipation of litigation or for trial," Civ.R. 26(B)(4).

3. *Attorney-Client Communications*. If the trial court determines that the Eddys did not make the prima facie showing of bad faith required by R.C. 2317.02(A)(2), then documents containing attorney-client communications are not subject to disclosure. If the court determines that the Eddys made a prima facie showing, then the court should examine the documents to determine whether the communications "are related to the attorney's aiding or furthering an ongoing or future commission of bad faith by the client," R.C. 2317.02(A)(2). If so, the documents may be subject to disclosure.

4. *Work Product.* Documents that contain Civ.R. 26(B)(4) work product are presumptively protected from disclosure. The trial court may order disclosure of such materials "only upon a showing of good cause therefor," Civ.R. 26(B)(4).

5. Any documents that do not contain R.C. 2317.02(A) attorney-client communications, or Rule 26(B)(4) work product are subject to discovery to the extent authorized by the Civil Rules. *See* Civ.R. 26(B)(1) (allowing "discovery regarding any nonprivileged matter that is relevant to any party's claim or redefense and proportional to the needs of the case").

## IV. CONCLUSION

{¶ 48} We reverse the judgment of the First District Court of Appeals. We remand this matter to the trial court to comply with R.C. 2317.02(A)(2) and Civ.R. 26(B)(4) as detailed in this opinion.

Judgment reversed
and cause remanded.

_____

Rittgers Rittgers & Nakajima, Gus J. Lazares, and Wesley M. Nakajima, for appellees.

Collins Roche Utley & Garner, L.L.C., Richard M. Garner, David W. Orlandini, and Sunny L. Horacek, for appellants.

Rutter & Russin, L.L.C., Robert P. Rutter, and Robert A. Rutter, urging affirmance for amicus curiae Ohio Association of Justice.

Cavitch, Familo & Durkin, Co., L.P.A., and Gregory E. O'Brien, urging reversal for Ohio Insurance Institute.

Koehler Fitzgerald, L.L.C., and Timothy J. Fitzgerald, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

_____